JOHN FRANKLIN *v.* ROBERT BERGER ET AL.
(13450)

HEALEY, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued January 12—decision released June 20, 1989

*Carl J. Schuman,* assistant attorney general, with whom were *William J. McCullough,* assistant attorney general, and, on the brief, *Clarine Nardi Riddle,* acting attorney general, for the appellant (respondent).

*Allison Rutland Soulen,* certified legal intern, with whom were *Miriam Berkman* and, on the brief, *Mary*

*McCarthy, Stephen Wizner, J. L. Pottenger, Jr., Robert A. Solomon* and *Shelley Geballe,* for the appellee (petitioner).

*Steven M. Sellers,* assistant state's attorney, filed a brief for the chief state's attorney as amicus curiae.

CALLAHAN, J. Certification was granted in this case limited to the question: "Did the state violate the guarantees of equal protection contained in the Connecticut and United States constitutions by declining to credit pretrial jail time against the length of an insanity acquittee's commitment to a mental hospital?" *Franklin* v. *Berger,* 208 Conn. 816, 546 A.2d 282 (1988). The Appellate Court answered this question in the affirmative. *Franklin* v. *Berger,* 15 Conn. App. 74, 544 A.2d 650 (1988). We disagree.

The facts relevant to this appeal are not in dispute and have been set forth in the opinion of the Appellate Court; id.; but can be briefly summarized as follows. On March 5, 1976, the petitioner was arrested and charged with manslaughter in the first degree in violation of General Statutes § 53a-55.[1] Although his bail, initially set at $100,000, was later reduced to $50,000,

---

[1] "[General Statutes] Sec. 53a-55. MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection; or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.

"(b) Manslaughter in the first degree is a class B felony."

the petitioner was unable to post a bond and was confined in jail for 293 days prior to trial. In addition, he spent 378 days in a mental hospital while his competency to stand trial was determined. Id.

On January 5, 1978, a criminal court adjudged the petitioner not guilty by reason of insanity. Pursuant to General Statutes (Rev. to 1977) § 53a-47 (repealed and replaced by General Statutes § 17-257),[2] the petitioner was sent to Norwich Hospital for a psychiatric examination. On April 27, 1978, the trial court found the petitioner to be a danger to himself or others and ordered him committed to a mental institution for a term of ten years pursuant to General Statutes (Rev. to 1977) § 53a-47 (b). See General Statutes § 17-257c (e) (1) (A). Thereafter, the state declined to credit the petitioner's pretrial jail time against the maximum term of his commitment set by the court.

On March 24, 1987, the petitioner filed a petition for a writ of habeas corpus alleging that the refusal to grant him credit for his pretrial jail time was violative of the equal protection guarantees of the federal and state constitutions.[3] The habeas court denied his peti-

---

[2] Although the petitioner was originally committed under General Statutes § 53a-47, General Statutes (Rev. to 1987) § 17-257w (a) makes General Statutes § 17-257 et seq. applicable in the instant action. That section states that "sections 17-257a to 17-257v, inclusive, apply . . . (2) to any person who, prior to July 1, 1985, was found not guilty by reason of mental disease or defect . . . and who, on July 1, 1985, is confined . . . or otherwise subject to court supervision pursuant to section 53a-47 of the general statutes, Revision of 1958, revised to January 1, 1985." Amendments to General Statutes (Rev. to 1987) § 17-257 et seq. became effective on October 1, 1987, and are codified in the current volumes of the General Statutes. See General Statutes § 17-257 et seq.; Public Acts 1987, No. 87-486. Although the 1987 amendment made no substantive changes, we note that because the petitioner's habeas petition was heard by the Superior Court in May, 1987, all references to § 17-257 et seq. in this opinion are to the preamended statute, General Statutes (Rev. to 1987) § 17-257.

[3] In addition, the petitioner asserted in his petition for habeas corpus that he was statutorily entitled to have the time he spent in confinement in a

tion finding no equal protection violation. On appeal,[4] the Appellate Court set aside the judgment of the habeas court and held that the state's practice of denying jail time credits to insanity acquittees violated the petitioner's equal protection rights. *Franklin* v. *Berger,* 15 Conn. App. 74, 544 A.2d 650 (1988).

At this point we note that "the concept of equal protection [under both the state and federal constitutions[5]] has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged." *Reynolds* v. *Sims,* 377 U.S. 533, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964); *Cleburne* v. *Cleburne Living Cen-*

---

mental institution prior to trial credited against the maximum term of his commitment. The habeas court rejected this argument and the petitioner did not raise it in the Appellate Court.

[4] While his appeal was pending before the Appellate Court, the petitioner's maximum term of commitment expired. Finding that the petitioner's claim was not moot on the basis of the principle of capable of repetition, yet evading review; *Delevieleuse* v. *Manson,* 184 Conn. 434, 437, 439 A. 2d 1055 (1981); the Appellate Court determined that it had the authority to hear the claim. *Franklin* v. *Berger,* 15 Conn. App. 74, 77–78, 554 A. 2d 650 (1988). We agree with the Appellate Court and base our jurisdiction on the same reasoning.

[5] The constitution of Connecticut, article first, § 20, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry or national origin."

The constitution of the United States, amendment fourteen, § 1, provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

We discuss the state and federal clauses simultaneously as " '[t]he equal protection provisions of the federal and state constitutions have the same meaning and limitations.' *Keogh* v. *Bridgeport,* 187 Conn. 53, 66, 444 A.2d 225 (1982)." *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 577, 512 A.2d 893 (1986).

*ter, Inc.,* 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985); *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 578, 512 A. 2d 893 (1986). The "equal protection clause does not require absolute equality or precisely equal advantages." *Ross* v. *Moffitt,* 417 U.S. 600, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974); *Daily* v. *New Britain Machine Co.,* supra, 577–78. Rather, a state may make classifications when enacting or carrying out legislation, but in order to satisfy the equal protection clause the classifications made must be based on some reasonable ground. *Ross* v. *Moffitt,* supra; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U.S. 283, 18 S. Ct. 594, 42 L. Ed. 1037 (1898); *Daily* v. *New Britain Machine Co.,* supra; *State* v. *Reed,* 192 Conn. 520, 531, 473 A. 2d 775 (1984). To determine whether a particular classification violates the guarantees of equal protection, the court must consider "the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification." *Dunn* v. *Blumstein,* 405 U.S. 330, 335, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972). Where the classification impinges upon a fundamental right or impacts upon an "inherently suspect" group, it will be subjected to strict scrutiny and will be set aside unless it is justified by a compelling state interest. Id., 342; *Bruno* v. *Civil Service Commission,* 192 Conn. 335, 345, 472 A.2d 328 (1984); *Laden* v. *Warden,* 169 Conn. 540, 542, 363 A. 2d 1063 (1975). On the other hand, where the classification at issue neither impinges upon a fundamental right nor affects a suspect group "it will withstand constitutional attack if the distinction is founded on a rational basis." *Laden* v. *Warden,* supra, 543; see also *McGinnis* v. *Royster,* 410 U.S. 263, 270, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1972); *Dandridge* v. *Williams,* 397 U.S. 471, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970).

To implicate the equal protection clauses under the state and federal constitutions, therefore, it is necessary that the state statute in question, either on its face or in practice, treat persons standing in the same relation to it differently. The petitioner in the instant case argues that by refusing to credit the time he spent in jail prior to his trial against the fixed maximum term of his commitment, the state is treating wealthy and poor insanity acquittees differently. Based on the premise that all acquittees are discharged at the expiration of the fixed maximum term of confinement set by the court at the commencement of commitment to a mental hospital under § 17-257c (e) (1) (A), the petitioner maintains that indigent acquittees who are held prior to trial because they are not able to afford bail will be confined for the full duration of the fixed maximum term in addition to the time they spend confined in jail prior to their trial, whereas those acquittees who are able to avoid confinement prior to their trial because they can afford bail will be confined only for the duration of the fixed maximum term set by the court. According to the petitioner, this alleged classification based on wealth that affects his fundamental liberty interest cannot be justified by a compelling state interest and, therefore, violates his guarantees of equal protection of the laws. A review of the statutory framework reveals, however, that the petitioner's reliance on the fixed maximum term as a measuring point for calculating an insanity acquittee's date of discharge from confinement is misplaced. When § 17-257a et seq. is viewed as a whole, it is clear that the discharge date of insanity acquittees cannot be calculated in days, but rather, is indeterminate, and dependent on the acquittee's ability to prove that he is no longer a danger to himself or others.[6] This being so, the state's denial of

---

[6] The petitioner recognizes that there could be an "indeterminate confinement [period] based solely on [an acquittee's] mental health" but

jail time credits to indigent acquittees such as the petitioner does not result in disparate treatment of wealthy and indigent acquittees and, therefore, the equal protection clauses of the state and federal constitutions have not been violated.

General Statutes §§ 17-257a through 17-257w govern the treatment of persons found not guilty by reason of mental disease or defect pursuant to General Statutes § 53a-13.[7] Under § 17-257c (a), a person acquitted under § 53a-13 is automatically, upon a verdict, committed by the court to the custody of the commissioner of mental health for initial confinement and examination. After a psychiatric examination in a state

attempts to distinguish it as a totally different type of confinement than the "sentence like" fixed maximum term set by the court under General Statutes § 17-257c (e) (1) (A). The petitioner claims that this case involves the "sentence like" fixed maximum term type of confinement. This distinction is invalid. Section 17-257 sets forth a comprehensive scheme for the confinement and discharge of insanity acquittees. Under the statute all acquittees are released when they are no longer a danger to themselves or others. See discussion, infra. Moreover, the petitioner's attempt to limit our review in this case to a factual situation involving discharge at the expiration of the fixed maximum term is not based on the facts in this case as the petitioner himself remains confined beyond the fixed maximum term at Norwich Hospital pursuant to a petition for continued confinement. The crediting of his pretrial jail time against the fixed term set by the court would, therefore, have not resulted in the petitioner's release.

[7] "[General Statutes] Sec. 53a-13. LACK OF CAPACITY DUE TO MENTAL DISEASE OR DEFECT AS AFFIRMATIVE DEFENSE. (a) In any prosecution for an öffense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law.

"(b) It shall not be a defense under this section if such mental disease or defect was proximately caused by the voluntary ingestion, inhalation or injection of intoxicating liquor or any drug or substance, or any combination thereof, unless such drug was prescribed for the defendant by a licensed practitioner, as defined in section 20-184a, and was used in accordance with the directions of such prescription.

"(c) As used in this section, the terms mental disease or defect do not include (1) an abnormality manifested only by repeated criminal or otherwise antisocial conduct or (2) pathological or compulsive gambling."

hospital; General Statutes § 17-257c (b);[8] the court is required to hold a hearing in order to "make a finding as to the mental condition of the acquittee." General Statutes § 17-257c (e). On the basis of its findings and, "considering that its primary concern is the protection of society," the court, under § 17-257c (e), has two options. "If the court finds that the acquittee is a person who should be confined, the court shall order the acquittee committed to the jurisdiction of the board and confined in a hospital for mental illness for custody, care and treatment pending a hearing before the board [to review the status of the acquittee]." General Statutes § 17-257c (e) (1). If confined, "the court shall fix a maximum term of commitment, not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense." General Statutes § 17-257c (e) (1) (A). At this initial hearing, the court may also determine that based on its findings "the acquittee is a person who should be discharged" and, if so, order the acquittee's discharge. General Statutes § 17-257c (e) (2). The acquittee has the "burden of proving by a preponderance of the evidence that he is a person who should be discharged." General Statutes § 17-257c (f).

If the acquittee is confined, he is under the sole jurisdiction of the psychiatric security review board (board). General Statutes § 17-257c (h). Although the statute states that the acquittee "shall be immediately discharged at the expiration of the maximum term of commitment"; General Statutes § 17-257c (h); he may be confined for either more or less time than that originally set by the court under § 17-257c (e) (1) (A), depending on his dangerousness to himself or others. The acquittee will be discharged before the end of the

---

[8] After a psychiatric examination by a state psychiatrist, the acquittee may request an examination by an independent psychiatrist. General Statutes § 17-257c (c).

term set by the court if, after periodic status review hearings[9] that are statutorily mandated during the term of the acquittee's commitment,[10] the board determines that the acquittee is a "person who should be discharged"[11] and makes application to the court for the discharge of the acquittee from confinement under General Statutes § 17-257n (a).[12] The acquittee may, however, also be confined beyond the maximum term originally set by the court if, at least ninety days prior to the expiration of said term, the state's attorney determines that the acquittee's discharge would "constitute a danger to himself or others" and petitions the court for an

[9] The procedures at such hearings are set forth at General Statutes §§ 17-257p, 17-257q, 17-257r. "At any hearing before the board, the acquittee, or any applicant seeking an order less restrictive than the existing order, shall have the burden of proving by a preponderance of the evidence the existence of conditions warranting a less restrictive order." General Statutes § 17-257q (f).

[10] The board is required to "conduct a hearing to review the status of the acquittee within ninety days of an order committing the acquittee to the jurisdiction of the board . . . ." General Statutes § 17-257d. Following that initial hearing, the board is required under General Statutes § 17-257f to "conduct a hearing to review the status of the acquittee not less than once every two years." Further, the superintendent of the state hospital to which the acquittee is committed is required, on the order of the board, to "submit to the board at least every six months a written report with respect to the mental condition of the acquittee." General Statutes § 17-257g. Copies of this report must be sent to counsel for the acquittee and the state's attorney. General Statutes § 17-257g.

[11] "Person who should be discharged" is defined in General Statutes § 17-257a (10) as "an acquittee who is not mentally ill to the extent that his discharge would constitute a danger to himself or others."

[12] The board acts under General Statutes § 17-257e which provides: "FINDING AND ACTION BY BOARD. RECOMMENDATION OF DISCHARGE. ORDER OF CONDITIONAL RELEASE OR CONFINEMENT. At any hearing before the board considering the discharge, conditional release or confinement of the acquittee, except a hearing pursuant to section 17-257m or subsection (d) of section 17-257n, the board shall make a finding as to the mental condition of the acquittee and, considering that its primary concern is the protection of society, shall do one of the following:

"(1) If the board finds that the acquittee is a person who should be discharged, it shall recommend such discharge and, pursuant to section 17-257n, file an application for discharge with the court.

order of continued commitment. General Statutes § 17-257n (c).[13] In the case of either an application for discharge from custody or a petition for continued commitment, the court is required to conduct a hearing at which it must "make a finding as to the mental condition of the acquittee and, considering that its primary concern is the protection of society," determine whether the acquittee is a person who should be discharged. General Statutes § 17-257n (g); see also General Statutes § 17-257n (d) and (e).

Under § 17-257n, therefore, an acquittee will not be released from confinement until he is no longer a danger to himself or others, regardless of the maximum term originally set by the court under § 17-257c (e) (1) (A). Our interpretation of § 17-257n is supported by its legislative history. Discussing the discharge of insanity

"(2) If the board finds that the acquittee is a person who should be conditionally released, the board shall order the acquittee conditionally released subject to such conditions as are necessary to prevent the acquittee from constituting a danger to himself or others.

"(3) If the board finds that the acquittee is a person who should be confined, the board shall order the person confined in a hospital for mental illness for custody, care and treatment."

Under General Statutes § 17-257m (a), the hospital superintendent may request the board to recommend to the court the discharge of the acquittee in custody. Following such a request, the board is required to conduct a hearing to determine whether the acquittee should be discharged. General Statutes § 17-257n (a). Also, the board may, on its own motion, consider whether to recommend discharge of the acquittee from custody and, after notice to the acquittee's counsel and the state's attorney, conduct a hearing to make a finding of whether the acquittee is a person who should be discharged. If the board determines that the acquittee should be discharged, it is required to apply to the court for discharge under General Statutes § 17-257n. General Statutes § 17-257m (b) and (c). Finally, the acquittee may, under the jurisdiction of the board, apply to the court for discharge from custody. General Statutes § 17-257n (a). An acquittee may not, however, "apply for discharge . . . more than once every six months and no sooner than six months after the initial board hearing held pursuant to section 17-257d." General Statutes § 17-257n (a).

[13] " 'Danger to himself or others' includes danger to the property of others." General Statutes § 17-257a (5).

acquittees from confinement, Senator Richard B. Johnston stated that "an acquittee might only be finally discharged upon application to the Superior Court, and acting only on the recommendation of the Psychiatric Review Board. I think this is an important piece of legislation, in that I believe the public would find this as a protection of public interest, and it would enhance the public's confidence in the fact that *dangerous, or potentially dangerous mentally ill persons are not, and would not, be discharged in society.*" (Emphasis added.) 28 S. Proc., Pt. 15, 1985 Sess., p. 4913.

The date of discharge of an acquittee from confinement is, therefore, not calculated by counting days as if the acquittee were sentenced to prison, but rather, is indeterminate, being totally dependant on the acquittee's personal mental health. Since the fixed maximum term set by the court does not determine the date an acquittee will be discharged from confinement, the petitioner's argument that the refusal of the state to credit his jail time against the fixed maximum term creates distinctions in the calculation of confinement time based on wealth is not valid. Subtracting an indigent acquittee's pretrial jail time from the fixed maximum term will not secure his discharge from confinement any sooner than if he were not credited with jail time. Jail time credit is irrelevant in calculating the release of an insanity acquittee because he is confined or released based on his dangerousness. There is, therefore, no difference in the treatment of wealthy and indigent acquittees under § 17-257n. The discharge of all insanity acquittees from confinement, rich or poor, is based on their ability to prove that they are no longer a danger to themselves or others, not on a lapse of time. General Statutes § 17-257n (f).

In addition to arguing that the fixed maximum term set by the court at the commencement of an acquittee's commitment is significant in calculating his discharge

date, the petitioner maintains that the expiration of said term is important because it shifts the burden to prove dangerousness under § 17-257n (f). The petitioner argues that while the acquittee has the burden to prove that he is not a danger to himself or others and that he should be discharged prior to the expiration of the fixed maximum term set by the court, he claims that the burden shifts to the state to prove that he should be retained in confinement after the expiration of the term set by the court.[14] He contends, therefore, that the failure to reduce an indigent acquittee's fixed maximum term with his pretrial jail time causes the acquittee to be confined for a longer period of time prior to

[14] General Statutes § 17-257n (f) provides: "After receipt of the board's report and any separate examination reports, the court shall promptly commence a hearing on the application for discharge or petition for continued commitment. At the hearing, the acquittee or the board when applying for an order of discharge, shall have the burden of proving by a preponderance of the evidence that the acquittee is a person who should be discharged."

Assuming that the equal protection clauses were implicated, the Appellate Court held that it was unfair to deny indigent acquittees their pretrial jail time because the state's interest of protecting society would be better served by petitioning for continued confinement under General Statutes § 17-257n. *Franklin* v. *Berger,* 15 Conn. App. 74, 83, 544 A. 2d 650 (1988). In so holding, the court stated that the burdens on the state under § 17-257n were minimal as they would merely have to file a petition for continued confinement. In footnote six of its opinion, the court stated, misciting General Statutes § 17-257e, that in a hearing for continued confinement the acquittee would have the burden of proving that he is a person who should be discharged. Id.

Arguing that the Appellate Court erred in finding that the state's burden under § 17-257n was minimal, the state maintains on appeal that the court was incorrect in finding that the acquittee, and not the state, has the burden of proving that the acquittee should be discharged at hearings for continued confinement. Stating that § 17-257n is ambiguous, the state urges us to find that the burden is on the state at such hearings and, therefore, the state's burden under the statute is more than minimal. While the Appellate Court did cite the wrong statutory provision in footnote six, it did not misstate the law. As discussed, infra, § 17-257n (f) places the burden on the acquittee at hearings for continued confinement to prove that he is a person who should be discharged.

the shifting of the burden of proof than wealthier acquittees who make bail. We do not agree.

General Statutes (Rev. to 1987) § 17-257n (f), which discusses the need for a hearing prior to a court ruling on all applications for discharge or petitions for continued confinement, states that "the acquittee or the board when applying for an order of discharge, shall have the burden of proving by a preponderance of the evidence that the acquittee is a person who should be discharged." Although § 17-257n (f) appears to be silent on the issue of who bears the burden of proof at hearings for continued commitment, amendments were made to that section in 1987 which place the burden on the acquittee to prove that he is a person who should be discharged at a hearing on an application of discharge and at a hearing on a petition for continued commitment. Public Acts 1987, No. 87-486. The 1987 amendment eliminated the language "when applying for an order of discharge" from § 17-257n (f), and the statute now reads: "After receipt of the board's report and separate examination reports, the court shall promptly commence a hearing on the recommendation or application for discharge *or petition for continued commitment.* At the hearing, the acquittee shall have the burden of proving by a preponderance of the evidence that the acquittee is a person who should be discharged." (Emphasis added.) While the 1987 amendment is not controlling in this case,[15] in our opinion the amendment was not intended by the legislature to change the existing law, but rather was meant to clarify it; see 30 H.R. Proc., Pt. 28, 1987 Sess., pp. 10, 183–90; and, therefore, "the amending language ' "must be accepted as the legislative declaration of the meaning of the [pre-amended] act." *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 246, 377 A.2d 305

---

[15] See footnote 2, supra.

(1977); see Sutherland, Statutory Construction (4th Ed.) §§ 22.31, 22.35.' *Lee* v. *Board of Education,* 181 Conn. 69, 75, 434 A.2d 333 (1980); see also *Circle Lanes of Fairfield, Inc.* v. *Fay,* 195 Conn. 534, 540, 489 A.2d 363 (1985)." *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 200 Conn. 630, 640–41, 513 A. 2d 52 (1986). Accordingly, in light of the 1987 amendment to § 17-257n (f), the acquittee bears the burden to prove that he is no longer a danger to himself or others when seeking discharge before the expiration of the fixed maximum term and also when contesting a petition by the state seeking continued confinement beyond the fixed maximum term. There is, therefore, no shifting of the burden of proof brought about by the petition for continued confinement at the expiration of an insanity acquittee's maximum term. The burden remains on the acquittee, either way, to prove that he is not a danger to himself or others before he may be discharged. There is, therefore, nothing that distinguishes insanity acquittees who are unable to make bail from those who are able to make bail.

Accordingly, because confinement of *all* acquittees under § 17-257 et seq. is based on dangerousness, the state's refusal to credit the petitioner's pretrial jail time against the fixed maximum term set by the court does not cause him to be confined for a longer period of time than acquittees who were not confined prior to trial because they were able to post a bond. Since the statute treats all acquittees the same, the equal protection clause is not implicated. *State ex rel. Francis* v. *Resweber,* 329 U.S. 459, 465, 67 S. Ct. 374, 91 L. Ed. 422 (1947) (if a "law applies to all alike, the requirements of 'equal protection [of the laws]' are met.")

The judgment of the Appellate Court is reversed.

In this opinion COVELLO and HULL, Js., concurred.

GLASS, J., concurring. Although I agree with the result, I disagree with the majority's conclusion that, under General Statutes (Rev. to 1987) § 17-257n (f), "the acquittee bears the burden to prove that he is no longer a danger to himself or others when seeking discharge before the expiration of the fixed maximum term [of commitment] and also when contesting a petition by the state seeking continued confinement beyond the fixed maximum term."

Section 17-257n (f), as revised to 1987, provides in full: "After receipt of the board's report and any separate examination reports, the court shall promptly commence a hearing on the application for discharge or petition for continued commitment. At the hearing, the acquittee or the board *when applying for an order of discharge,* shall have the burden of proving by a preponderance of the evidence that the acquittee is a person who should be discharged." (Emphasis added.)

The construction given by the majority is, I believe, at variance with the language of § 17-257n. By its express terms, subsection (f) fixes the burden of proof on the acquittee or the board only when discharge is sought prior to the expiration of the maximum term. It is silent with regard to the burden of proof on the state's attorney's application for continued confinement. It is a well settled principle of statutory construction that the expression of one thing is the exclusion of the other. Thus, subsection (f)'s limitation to applications for discharge would appear to express the intent that the state's attorney bears the burden of proving the acquittee's continued dangerousness when petitioning for a commitment beyond the maximum term. Further, "one seeking relief bears the burden of demonstrating that he is entitled to it." *Clark* v. *Community for Creative Non-Violence,* 468 U.S. 288, 293 n.5, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984).

Because the version of § 17-257n (f) as revised to 1989 is not in issue in this case, I do not find persuasive the majority's reliance on the subsequent amendment. As revised to 1989, § 17-257n (f) provides that "the court shall . . . commence a hearing on the recommendation or application for discharge or petition for continued commitment. At the hearing, the acquittee shall have the burden of proving by a preponderance of the evidence that the acquittee is a person who should be discharged." Under the majority's construction of this language, the state's attorney satisifies his statutory burden in seeking to continue the acquittee's confinement by performing the ministerial act of filing a petition with the trial court at least ninety days before the completion of the maximum commitment term. At the hearing, the acquittee must prove that he is eligible for discharge, notwithstanding the fact that he has completed his maximum term of commitment ordered by the court. I am not persuaded that the legislature intended this result. Moreover, it is significant that the parties, as well as amicus, agree that § 17-257n (f), even as amended, places on the state's attorney the burden of proof in a hearing on a petition for continued confinement.

It seems to me that, once an acquittee completes the fixed maximum term, he becomes entitled to the same rights as anyone else respecting involuntary commitment to a mental health facility. Those rights include the right not to be committed unless the party seeking the commitment proves the necessity of commitment by clear and convincing evidence. General Statutes § 17-178 (c). Moreover, this is not a case in which the statute pertaining to insanity acquittees provides for indefinite commitment without any fixed maximum commitment term. Cf. *Jones* v. *United States*, 463 U.S. 354, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983).

Despite these considerations, I concur in the result reached by the majority. Under our statutory scheme, the acquittee's confinement in a mental health facility "rests on his continuing illness and dangerousness." Id., 369. The statutes contemplate that these two considerations must guide the trial court in establishing a maximum commitment term. General Statutes (Rev. to 1987) § 17-257c. If, upon reviewing evidence of an acquittee's past conduct and psychiatric background, the trial court determines that the interests of the acquittee and society are best served by an indefinite commitment term not to exceed a particular number of years, it would make no sense to sever from that commitment time the time the acquittee spent in jail prior to sentencing. During the presentence jail time, of course, a defendant who is subsequently acquitted by reason of insanity is not receiving any therapy designed to eradicate his mental illness. Jail is not a therapeutic milieu. Thus, to credit presentence jail time against the maximum commitment term runs counter to the rationale of the commitment provisions. Accordingly, I concur.

ARTHUR H. HEALEY, J., concurring. I write separately because, in my view, our resolution of this appeal requires us to address directly the issue upon which we granted certification: "Did the state violate the guarantees of equal protection contained in the Connecticut and United States constitutions by declining to credit pretrial jail time against the length of an insanity acquittee's commitment to a mental hospital?" *Franklin* v. *Berger*, 208 Conn. 816, 546 A.2d 282 (1988). I believe that we must address this issue regardless of whether the burden of proof is on the acquittee or the state when the state files a petition for continued commitment. Upon analysis, I conclude that the state did

not violate the equal protection clause by declining to reduce the acquittee's maximum term of commitment.[1]

Equal protection of the laws requires that similarly situated persons be treated similarly or if persons or classes are treated disparately, that there be a justification for such disparate treatment. *Johnson* v. *Manson,* 196 Conn. 309, 321–22 n.12, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787, reh. denied, 475 U.S. 1061, 106 S. Ct. 1290, 89 L. Ed. 2d 597 (1986), citing *Salsburg* v. *Maryland,* 346 U.S. 545, 551, 74 S. Ct. 280, 98 L. Ed. 281 (1954), *Baxtrom* v. *Herold,* 383 U.S. 107, 112, 86 S. Ct. 760, 15 L. Ed. 2d 620 (1966), and *Missouri* v. *Lewis,* 101 U.S. 22, 31, 25 L. Ed. 989 (1880)." 'Equal protection analysis must commence with a determination of whether a legislative classification is invidious, or "inherently suspect," or whether the legislation impinges upon a fundamental right. Where the legislation impinges upon a fundamental right or creates a suspect classification then it must be struck down unless justified by a compelling state interest. . . . Where the statute does not involve fundamental rights

---

[1] I agree with Justice Glass's analysis of General Statutes (Rev. to 1987) § 17-257n (f) in finding that this statute is ambiguous and that the burden of proof is on the state when the state's attorney files a petition for continued commitment. As the statute existed in 1987, it was silent as to the burden of proof upon a petition for continued commitment. I also am not presuaded that the 1989 revision of § 17-257n (f) was intended to clarify the issue of upon whom the burden of proof rests when the state initiates a petition for continued commitment as claimed by the majority. In addition to Justice Glass's analysis, I would add that in my view, to place the burden of proof on the acquittee to establish eligibility for discharge upon the expiration of the maximum commitment term impinges on the acquittee's liberty interest and thus implicates due process concerns. See *Fasulo* v. *Arafeh,* 173 Conn. 473, 476, 378 A.2d 553 (1977). While I do not dispute the power of the state to continue the commitment of those insanity acquittees who still pose a danger to themselves or others after the expiration of the maximum commitment term, to avoid constitutional infirmity I believe that the burden of proof to establish such a danger at the end of that term must be on the state. See id., 480–81.

or suspect classifications, the legislation will withstand constitutional attack if the distinction is founded on a rational basis." (Citations omitted.) *Frazier* v. *Manson,* 176 Conn. 638, 645, 410 A.2d 475 (1979).

Although I agree with the majority opinion insofar as it says that it is often impossible to reduce commitment periods by jail time because most acquittees are committed to a mental health facility for an indefinite period of time depending on their mental health, this argument does not seem to hold true for those acquittees who serve the definite maximum commitment term as set by the trial court and who are released upon the expiration of that term. This is precisely the claim that the petitioner asserts. For this group of individuals that serves no more or no less than the maximum term of commitment, there necessarily are disparate periods of total confinement (jail time and commitment time) between those who can and those who cannot afford bail. The question presented to this court must be whether this disparate treatment violates the constitutional guarantee of equal protection of the laws.[2]

As stated earlier, we must determine whether the classification of the two groups, i.e., (1) those individuals who are confined in jail before trial *and* for the maximum term of commitment in a mental health facility, and (2) those who are confined only for the maximum term of commitment in a mental health facility, is "inherently suspect" or whether the legislative scheme impinges on a fundamental right. I conclude that this case involves neither a suspect class nor a fundamental right.

---

[2] Whether the burden of proof shifts to the acquittee at the expiration of the definite maximum term in the event that the state files a petition for continued commitment does not obviate the disparate treatment between those persons who have spent time in jail prior to their commitment and those who have not spent time in jail prior to their commitment. The former group necessarily has been confined for a longer period of time than the latter.

According to the parties, the acquittee in this case was indigent and therefore unable to post the pretrial bond and, consequently, spent 293 days in jail prior to trial. Accordingly, the petitioner alleges a classification based on indigency for purposes of equal protection analysis.

Although the petitioner argues that the court's analysis of this equal protection issue must be guided by the strict scrutiny standard, he does not allege, nor would I find, that his status as an indigent makes him a member of a suspect class. See Petitioner's Brief, p. 15; *San Antonio Independent School District* v. *Rodriguez,* 411 U.S. 1, 28–29, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973); *Moscone* v. *Manson,* 185 Conn. 124, 130, 440 A.2d 848 (1981); J. Nowak, R. Rotunda & J. Young, Constitutional Law (2d Ed. 1983) p. 731. Rather, the petitioner claims, as the Appellate Court found, that strict scrutiny is the appropriate standard of review based on the infringement of a fundamental right. The petitioner claims that "[h]ere the refusal to credit petitioner with jail time affects the period of his confinement under the fixed maximum term. His liberty right is impinged upon by the additional 293 days he is confined before the expiration of that term triggers a discharge or a shifting of the burden of proof at a court hearing."

I disagree with the petitioner's contention. I am inclined to follow the reasoning of those cases that hold jail time credit to be a matter of legislative grace rather than a constitutional requirement. See, e.g., *Lewis* v. *Cardwell,* 609 F.2d 926, 928 (9th Cir. 1979); *Jackson* v. *Alabama,* 530 F.2d 1231, 1237 (5th Cir. 1976); *Johnson* v. *Manson,* supra, 321 n.12; *People* v. *Turman,* 659 P.2d 1368, 1373–74 (Colo. 1983); cf. *Johnson* v. *Prast,* 548 F.2d 699, 702 (7th Cir. 1977); *King* v.

*Wyrick,* 516 F.2d 321, 323 (8th Cir. 1975); *United States* v. *Gaines,* 449 F.2d 143, 144 (2d Cir. 1971).[3]

Because I consider jail time credit as a matter of legislative grace, and I do not view the denial of such credit as implicating fundamental rights or, in this case,

---

[3] While I recognize that our discussion in *Laden* v. *Warden,* 169 Conn. 540, 544, 363 A.2d 1063 (1975), which we reiterated in *Payton* v. *Albert,* 209 Conn. 23, 33, 547 A.2d 1 (1988), where we said that "[t]he refusal to credit the plaintiff with jail time affects the period of his confinement and directly impinges on his fundamental right of liberty," is inconsistent with our statement in *Johnson* v. *Manson,* 196 Conn. 309, 321 n.12, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787, reh. denied, 475 U.S. 1061, 106 S. Ct. 1290, 89 L. Ed. 2d 597 (1986), I agree with the state's argument that the statement in *Laden* is too broad. The overbroad nature of the statement in *Laden* is demonstrated by the logical inference from it that the denial of good time credit also implicates a fundamental liberty right because such a denial also necessarily affects the length of an individual's confinement. This court and the United States Supreme Court have declared, however, that there is no constitutional right to good time credit. See *Wolff* v. *McDonnell,* 418 U.S. 539, 577, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); *Frazier* v. *Manson,* 176 Conn. 638, 646–47, 410 A.2d 475 (1979). Thus, I maintain that jail time credit is a matter of legislative grace and is not constitutionally required.

Furthermore, it must be noted that most of the cases holding that jail time credit is not constitutionally mandated recognize that under the United States Supreme Court's holdings, such as *Tate* v. *Short,* 401 U.S. 395, 91 S. Ct. 668, 28 L. Ed. 2d 130 (1971), and *Williams* v. *Illinois,* 399 U.S. 235, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970), such credit may be necessary to avoid constitutional difficulty when an indigent defendant is sentenced to the maximum allowable term for an offense. I conclude that this principle is inapposite here because the petitioner's maximum term of commitment based on his insanity acquittal was not the maximum allowable term that the trial court could have imposed under the offense charged, i.e., manslaughter in the first degree. See General Statutes § 17-257c (e). A distinction must be drawn between the maximum term of commitment to a mental health facility and the maximum allowable sentence under the charge upon which the individual was acquitted. The trial court can set the maximum term of commitment at any length of time not exceeding the maximum allowable sentence that the individual could have received if convicted of the crime charged. See General Statutes § 17-257c (e). The trial court in this case ordered the petitioner committed for a maximum term of ten years, whereas the maximum allowable term of incarceration for manslaughter in the first degree, the charged offense, was twenty years. See General

affecting a suspect class, the standard of review in an equal protection challenge such as this is whether the denial of jail time credit is rationally related to a legitimate government purpose. See *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 597, 479 A.2d 793 (1984). I conclude that the statute satisfies this rational basis standard.

Without doubt, the state has a legitimate interest in protecting society from individuals who are mentally disabled and pose a danger to others. Similarly, the state has an interest in protecting mentally disabled persons from harm that they might inflict upon themselves. General Statutes § 17-257c provides for this protection by authorizing the commitment of persons found not guilty by reason of mental disease or defect in our state mental health facilities. While committed, these individuals receive treatment that may eventually enable them to be released from the mental health facilities. See General Statutes § 17-257c (e) (1). Undoubtedly, treatment of one's mental disease or defect is essential.

As Justice Glass states in his concurring opinion, there is no such mental health treatment during pretrial jail time. Accordingly, it is rational not to reduce

Statutes (Rev. to 1975) §§ 53a-35 (b) (2) and (c) (2) and 53a-55 (b). Accordingly, because the petitioner did not receive the maximum allowable term of commitment based on the penalty provision of the manslaughter statute, the United States Supreme Court's concern that "once the State has defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency"; *Williams* v. *Illinois,* supra, 241–42; is not at issue here. In other words, the indigent petitioner in this case is not being treated unconstitutionally in the equal protection context as expounded in *Williams* v. *Illinois,* supra, because even with the petitioner's jail time added to his ten year commitment, he is not being confined beyond the maximum allowable sentence under the offense, i.e., manslaughter in the first degree. Therefore, the exception to the general principle that jail time credit is not constitutionally mandated is not a concern here; the petitioner is not confined beyond the period of time that the legislature has deemed to be the "outer limit."

an insanity acquittee's maximum term of commitment, during which he or she receives such treatment, by the acquittee's pretrial jail time, during which no such treatment is provided. The goals of each form of confinement are vastly different. See *McGinnis* v. *Royster*, 410 U.S. 263, 270–71, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1973). Therefore, the habeas court did not err in refusing to reduce the petitioner's maximum commitment term by the amount of time that he spent in jail before sentencing.

Accordingly, I concur in the result reached by the majority.