[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Abington Constructors, Inc. (Abington), challenges an adverse ruling of the department of consumer protection (DCP), acting jointly through its heating and cooling work examining board and plumbing and piping work examining board (the boards), interpreting the term "installation" as used in the definitions of "plumbing and piping work" and "heating, piping and cooling work" in General Statutes § 20-330 (3) and (5). Pursuant to General Statutes §§ 20-336 and 4-183, Abington appeals arguing that the boards' interpretation of "installation" violates the equal protection clauses of the United States and Connecticut constitutions because it unreasonably prevents non-licensed laborers from performing the work of their trade. The boards' findings are insufficient for the court to determine if a rational basis for or a legitimate government interest is served by their rulings; thus, the appeal is sustained and the case remanded for further proceedings.
The parties have stipulated to the fact that the boards do not regulate the movement or handling of piping materials at off site locations. Abington is "a heavy industrial construction company that performs both civil and mechanical construction services in New England." Abington employs iron work riggers and welders, in addition to operators of cranes and other equipment. The boards found that Abington's iron work riggers are trained in moving, lifting, and suspending heavy loads. Abington's crane and equipment operators are also trained, according to the findings.
These workers are not licensed to perform "plumbing and piping" or "heating, piping and cooling" work. Section 22 230(3) defines "plumbing and piping work" as "the installation . . . of gas, water and associated fixtures . . ." "Heating, piping and CT Page 6583 cooling work" is defined as "the installation . . . of any apparatus for piping, appliances, devices or accessories for heating systems, excluding sheet metal work; air conditioning and refrigeration systems, boilers, including apparatus and piping for the generation or conveyance of steam and associated pumping equipment . . ." Abington employs tradesmen who are licensed to perform "plumbing and piping work" or "heating, piping and cooling work" in Connecticut. The DCP issues licenses to these individuals. General Statutes §§ 20-331 through 334.
On May 11, 1995, the boards held a hearing on the plaintiff's May 11, 1995 petition for a declaratory ruling. The petition asked the boards to rule on four questions, all involving the interpretation of the word "installation" in § 20-330 (3) and (5). The tasks included in this definition must be performed exclusively by the licensed plumbers and heating and cooling tradesmen. The boards issued their rulings on September 29, 1995. The questions for which Abington requested declaratory rulings and the boards' answers are as follows:
 (1) Does the handling or movement of piping materials from storage at the job site to the point of final assembly, whether manually or with tools or equipment, constitute "installation" within the meaning of C.G.S. Section 20-330 (3) and (5), and the Occupational Licensing Regulations adopted pursuant to that statute? If so, why?
 The answer to this question is "yes, except for the operation of a crane." The manner and sometimes the sequence of moving — these materials are integral parts of the process of installation, and therefore must necessarily be done by licensed persons only.
 (2) Does the off-loading of piping materials at the job site from delivery vehicles, whether manually or with tools or-equipment, constitute "installation" within the meaning of C.G.S. Section 20-330 (3) and (5), and the Occupational Licensing Regulations adopted pursuant to that statute? If so, why?
 The answer to this question is "not when the materials are off-loaded at a storage site, but yes when dropped at the job site." The exception for crane operator applies here also. The reason for this is the CT Page 6584 same as for question 1: This work constitutes and integral part of the installation process.
 (3) Does the assembly of pipe hangers or other supports in connection with a covered piping activity constitute "installation" within the meaning of C.G.S. Section 20-330 (3) and (5), and the Occupational Licensing Regulations adopted pursuant to that statute? If so, why?
 The answer to this question is "yes." "Installation" is defined in the American Heritage Dictionary, 1976 Ed., as "The act of installing or the act of being installed." That volume also defines "install" as "to set position and connect or adjust for use." Most piping, especially that which Petitioner usually handles, requires supports of some type to ensure a safe and lasting system. Not only has Petitioner stated that "assembly" as used in question 3 means attachment or installation, but "hangers or other supports" denote as well as connote something which is essential to securely hold the piping in place. Thus, they are integral parts of the installation itself, and this is why licensed persons must do this work.
 (4) If a properly licensed person is directing the lifting, movement and alignment of piping materials, whether manually or with tools or equipment, during the assembly process of a covered piping activity, do the persons performing the lifting, movement and alignment labor also have to be licensed? If so, why?
 The answer is "yes." The reason why is because the persons doing the actual work, whether directed by a properly licensed person or not, are doing the very work which is explicitly required by law to be done by licensed persons.
Abington timely appealed to this court on November 13, 1995.
"Proof of aggrievement is an essential prerequisite to the court's jurisdiction of the subject matter of the appeal." Local1303 Local 1378 v. FOIC, 191 Conn. 173, 177 (1983). In its answer, the boards left Abington to its proof of aggrievement. CT Page 6585 "The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specifically and injuriously affected by the decision." (Citations and internal quotation marks omitted.)Local 1303 Local 1378 v. FOIC, supra, 191 Conn. 176.
Abington will not be permitted to conduct business in Connecticut unless it employs licensed journeymen to perform "plumbing and piping" or "heating, piping and cooling" work. General Statutes § 20-341u(c)(2). If the boards' rulings stand, then these types of work include offloading, moving, lifting, hoisting, assembling and aligning piping materials on the construction site; and they may not be performed by Abington's non-licensed workforce.
Abington may lose its certificate of registration or its certificate may not be renewed should it follow its practice of using unlicensed laborers to perform "installation." Without a certificate of registration, Abington cannot conduct business in Connecticut. See General Statutes §§ 20-341t and 341w. Furthermore, there is evidence that requiring the use of licensed journeymen, who earn more than non-licensed workers, to perform these tasks raises the cost of doing business for Abington. For these reasons, Abington is aggrieved.
Turning to the merits of this appeal, the standard of review in administrative appeals is well-established. "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . in violation of constitutional or statutory provisions." General Statutes § 4-183 (j)(1).
The standard rule requires "deference to the construction given a statute by the agency charged with its enforcement. Deference may be appropriate when the issue is the application of general statutory language to a particular fact-bound controversy. . . . [T]he factual and discretionary determinations CT Page 6586 of administrative agencies are to be given considerable weight by the courts . . . [however,] it is for the courts, and not for administrative agencies to expound and apply governing principles of law." (Citations and internal quotation marks omitted.)Bridgeport Hospital v. CHRO, 232 Conn. 91, 108 (1995).
Abington does not challenge the statutory framework; rather, it challenges the boards' interpretation of "installation." It argues that the boards' rulings violate the equal protection clause of the United States and Connecticut constitutions in that it unreasonably interprets "installation" as used in § 20-330
(3) and (5) such that it would allow only licensed plumbers and heating, piping and cooling tradesmen to handle piping materials on construction sites. Even if qualified, unlicensed laborers would not be allowed to perform these tasks.
The fourteenth amendment to the U.S. Constitution provides in pertinent part: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Articlefirst, section 20 of the Connecticut Constitution provides: "[n]o person shall be denied equal protection of the law . . . ."
"The equal protection provisions of the federal and state constitutions have the same meaning and limitations." Keogh v.Bridgeport, 187 Conn. 53, 66, 444 A.2d 225 (1982); Franklin v.Berger, 211 Conn. 591, 594 n. 5, 560 A.2d 444 (1989). Equal protection requires "the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged." Reynolds v. Sims, 377 U.S. 533, 565, 84 S.Ct. 1362,12 L.Ed.2d 506 (1964); Franklin v. Berger, 211 Conn. 591, 594,560 A.2d 444 (1989). "State action concerning social and economic regulation . . . will survive an equal protection challenge if it satisfies a rational basis test. Daly v. DelPonte, 225 Conn. 499,513, 624 A.2d 876 (1993)." Bower v. D'Onfro, 38 Conn. App. 685,694 (1995). Pursuant to the rational basis test it must be determined "whether the classification and disparate treatment . . . bear a rational relationship to a legitimate state end and are based on reasons related to the accomplishment of that goal. . . . A classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relationship to the object of the legislation, so that all persons similarly circumscribed shall be treated alike." (Citations and internal quotation marks omitted.)Zapota v. Burns, 207 Conn. 496, 507 (1988). CT Page 6587
The boards state that the offloading, moving, lifting, hoisting, assembling and aligning of piping materials are integral parts of installation. The boards' statements fail to explain why these tasks are integral to the installation process. The installation process is not described by the boards, though there is some discussion of it in the hearing transcript.[1]
The boards' rulings do not mention any finding that licensed journeymen would be more capable than experienced unlicensed iron work riggers in performing these tasks; or the legitimate state objective to which this requirement is rationally related.
Except for the ruling in question 3, the boards in their rulings do not state that safety interests or any other legitimate governmental interest would be implicated if non-licensed workers were to move the piping materials on and around a construction site. Indeed, even question 3 fails to mention whose safety would be compromised and why safety would be compromised if non-licensed workers, such as iron work riggers, were to handle piping materials. The boards merely declare that the sequence of moving materials is an integral part of the process of installation, and must necessarily be done by licensed workers except where cranes are used.
Abington argues that the use of iron work riggers and lifting equipment improves safety conditions in the work area without compromising the quality of workmanship. There is testimony by Abington's vice president and project manager indicating that it may be safer to have the experienced iron work riggers and moving equipment offload, move and lift the piping materials, especially when the materials are heavy or bulky. Though the boards' rulings are silent on this disputed point, the boards create an exception that allows-cranes to offload and move piping materials on construction sites. Crane operators, like the iron work riggers or other equipment operators, are not licensed to "install" these materials.
This is contrary to the boards' finding that these iron work riggers are trained in moving, lifting, and suspending heavy loads. The boards also find that Abington's equipment operators, and not just its crane operators are trained. The reason for limiting the exception to cranes is not enunciated. Operators of other mechanical equipment or iron work riggers are by the boards' own rulings trained to perform this work. If the exception is based on safety concerns given the size and weight of the piping materials, then it seems logical that other CT Page 6588 equipment and perhaps iron work riggers should properly be allowed to move and lift materials.
Interestingly, the boards' rulings on questions 1 and 2 do not coincide with the definition of "install" referenced in ruling number 3. That definition, taken from the AmericanHeritage Dictionary provides: "to set in position, connect or adjust for use." Moving the piping materials on and around the job site is not mentioned and cannot be plainly inferred from this definition. The boards did not explain this apparent inconsistency.
This case must be remanded for further proceedings. See AnnHoward's Apricots Restaurant v. CHRO, 237 Conn. 209, 232-33
(1996). The boards' rulings do not present a single definition of "installation" that is applied in all four rulings, an explanation of what safety or other governmental interests are served by this definition, an explanation of how these interests are served by excluding non-licensed tradesmen from handling piping materials, or the reasons for and state interests served by carving out a limited exception for crane operators alone. To avoid improper speculation on these matters by this court, the boards must revisit this case before Abington's equal protection challenge is addressed. After hearing further evidence and argument by Abington and other interested parties, the boards shall issue another declaratory ruling on each of the four questions posed by Abington. In accordance with this decision, the boards' new written rulings shall articulate the basis for their declaratory rulings.
The appeal is sustained and the case remanded for further proceedings in accordance with this decision.
Robert F. McWeeny, J.