STOCKTON KENWORTH, INC., a California Corpora-
tion, Appellant, *v.* MENTZER DETROIT DIESEL,
INC., a Nevada Corporation, Respondent.

No. 15770

August 27, 1985                                    705 P.2d 145

*Manoukian, Scarpello and Alling,* and *Kelly R. Chase,* Carson
City, for Appellant.

*Paul J. Williams,* Reno, for Respondent.

# OPINION

*Per Curiam:*

On October 1, 1976, appellant Stockton Kenworth sold a new Kenworth tractor-truck to one Harold Nixon. As partial consideration for the purchase, Nixon executed a note and security agreement in favor of Stockton Kenworth. The agreement provided that if Nixon failed to make payments, Stockton Kenworth could repossess the vehicle. The sale took place in Nevada, as Stockton Kenworth delivered the truck in this state. Stockton Kenworth did not make a report of sale to the California State Board of Equalization, nor was there a report of sale in Nevada as required by NRS 482.423.

In December, 1978, Nixon brought the truck to respondent, Mentzer, for extensive motor repairs. Mentzer performed the repairs, then notified Nixon that the truck was ready to be picked up and that the repair bill was $10,403.01. From that point forward, Nixon's whereabouts have remained a mystery.

In May, 1980, Mentzer notified Stockton Kenworth that unless the repair bill was paid by June 6, 1983, they would sell the truck at auction to satisfy the garageman's lien. Stockton Kenworth filed a complaint, and a writ of possession was issued for the truck. Mentzer's motion to quash the writ was denied.

Thereafter, on February 4, 1982, Mentzer offered to have judgment taken against it pursuant to NRCP 68. Stockton Kenworth did not accept the offer and the case proceeded to trial. The district court filed a judgment in favor of Mentzer on January 26, 1984. The court authorized the vehicle to be sold at auction to satisfy Mentzer's garageman's lien, with the balance of the proceeds to go to Stockton Kenworth. The court also issued an order awarding Mentzer its attorney's fees and costs because it concluded that Mentzer had made a "valid offer" pursuant to NRCP 68, and that judgment ultimately rendered by the court was not more favorable to Stockton Kenworth than the offer.

In this appeal, we must interpret the language of NRS 108.290.[1] The trial court concluded that the words "secured transaction," as used in the statute, mean *perfected* security interest only. We agree.

If we were to interpret the words "secured transaction" as encompassing *both* perfected and unperfected security interest, the result would be that a garageman who undertook to perform repairs or offer other services in excess of $750, could never be certain that there was not an unrecorded security interest potentially superior to his. The drafters of Article 9 of the U.C.C. clearly foresaw priority disputes of this type and provided suggested rules. For example, NRS 104.9301 provides:

104.9301 Persons who take priority over unperfected security interests; right of "lien creditor."
1. Except as otherwise provided in subsection 2, an *unperfected* security interest is *subordinate* to the rights of:
(a) Persons entitled to priority under NRS 104.9312.
(b) *A person who becomes a lien creditor before the security interest is perfected.*
. . . .
3. *A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy or the like* and includes an assignee for benefit of creditors from the

---

[1]NRS 108.290 reads:

108.290 Lien in excess of $750 is secondary lien; limitation on lien of keepers of trailer parks.
1. Except as provided in subsection 2, any lien in excess of $750 acquired as provided in NRS 108.270 to 108.360, inclusive, is a secondary lien when the motor vehicle, airplane, motorcycle, motor or airplane equipment, or trailer in question is the subject of a *secured transaction.*
. . . .

(Emphasis added) (The statute as worded when this controversy arose was identical except that the amount of the statutory exception was then $300.)

time of assignment, and a trustee in bankruptcy from the date of filing of the petition or a receiver in equity from the time of appointment.

. . . .

(Emphasis added). The rules of NRS 104.9301 are both equitable and preferred. Under NRS 104.9301 an *unperfected* security interest such as exists in the instant case is given lower priority status than a lien creditor. This comports with the drafters' intent that perfection (and the attendant notice—providing recordation) is the only method to *insure* priority. Under the U.C.C. rule of priority, a potential lien creditor can search the appropriate records and find any potentially superior liens.

Before 1965, when this state adopted the U.C.C., NRS 108.290 referred to motor vehicles that were the subject of a "conditional sales agreement." Under a conditional sale no interest passed to the buyer until the contract was satisfied, and until then the seller retained title. Therefore a potential lien creditor was put on notice of possible superior liens by virtue of the buyer's lack of title as well as by the public record.

We find no indication of legislative intent to change the status quo. Yet, if we interpret NRS 108.290 to encompass both perfected and unperfected security interests, such an interpretation would mean a change in the status quo from pre-U.C.C. days. We conclude the trial court properly ruled that NRS 108.290 refers only to perfected security interests. A potential lien creditor is entitled to notice of any superior liens.

The trial court issued an order awarding Mentzer its attorney's fees and costs, ruling that Mentzer had made a valid offer pursuant to NRCP 68.[2] The offer read:

> Pursuant to Rule 68, Nevada Rules of Civil Procedure, Defendant, MENTZER DETROIT DIESEL, INC., hereby offers judgment to be taken against it pursuant to the Complaint filed herein as follows: that Plaintiff transfer title to the personal property subject of the Complaint and that

---

[2]RULE 68. OFFER OF JUDGMENT

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree shall not recover costs, nor attorneys' fees, but shall pay the costs and attorneys' fees, if any be allowed, of the party making the offer from the time of the offer. . . .

Defendant be ordered to pay Plaintiff the sum of TEN THOUSAND and no/100 DOLLARS ($10,000.00) upon receipt of a good title to the vehicle.

Stockton Kenworth contends that the offer was not valid under NRCP 68 because it was conditional. We agree.

In addition to other requirements, the offer must be for a definite or ascertainable amount so that the parties can be unequivocally aware of what the defendant is willing to pay for his peace. "[T]he offer must specify a definite sum for which judgment may be entered, which plaintiff can either accept or reject. It must be unconditional. . . ." Wright and Miller, *Federal Procedure* Ch. 9 § 3002; Tansey v. Transcontinental & Western Air, 97 F.Supp. 458, 459 (D.D.C. 1949) (offer of judgment did not specify a definite sum; therefore the offer would not under the rule prevent award by the court of plaintiff's costs).

The supposed offer in this case would have required Stockton Kenworth to obtain in some fashion a "good title" to the vehicle as a condition precedent to receiving payment from Mentzer. We hold that such offer was indefinite and conditional and therefore not an offer within NRCP 68. The award of attorneys' fees and costs is reversed; the judgment of the trial court is affirmed in all other respects.