## Neil Broadley et al. *v.* Board of Education of the City of Meriden et al.
### (14658)

Peters, C. J., Callahan, Borden, Norcott and Palmer, Js.

Argued November 3, 1993—decision released March 16, 1994*

---

* March 16, 1994, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

1

*David Tilles,* with whom were *Howard Klebanoff* and *Alyce Raboy,* for the appellants (named plaintiff et al.).

*Elizabeth A. Foley,* for the appellee (named defendant).

*Bernard F. McGovern, Jr.,* assistant attorney general, with whom were *John R. Whelan,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellees (defendant state board of education et al.).

PALMER, J. This case requires us to decide whether General Statutes §§ 10-76a[1] and 10-76d[2] establish a

_____

[1] General Statutes § 10-76a provides in relevant part: "(c) An 'exceptional child' means a child who deviates either intellectually, physically, socially or emotionally so markedly from normally expected growth and development patterns that he or she is or will be unable to progress effectively in a regular school program and needs a special class, special instruction or special services. . . .

"(e) 'Children requiring special education' includes any exceptional child who (1) is mentally retarded, physically handicapped, autistic, traumatically brain injured, socially and emotionally maladjusted, neurologically impaired, or suffering an identifiable learning disability which impedes such child's rate of development, which disability is amenable to correction or which rate of development may be improved by special education, or (2) has extraordinary learning ability or outstanding talent in the creative arts, the development of which requires programs or services beyond the level of those ordinarily provided in regular school programs but which may be provided through special education as part of the public school program. . . ."

[2] General Statutes § 10-76d provides in relevant part: "(b) In accordance with the regulations of the state board of education, each local and regional

state constitutional right to special education[3] for gifted children.[4] The plaintiffs, Neil Broadley and Deborah Broadley,[5] brought this action seeking a declaratory judgment determining the plaintiff's right to special education. The trial court granted the motions for summary judgment[6] of the defendants, the Meriden board of education, the Connecticut state board of education and the commissioner of education, Gerald Tirozzi, con-

board of education shall: (1) provide special education for school-age children requiring special education who are described in subdivision (1) of subsection (e) of section 10-76a. . . .

"(c) Each local or regional board of education may provide special education for children requiring it who are described by subdivision (2) of subsection (e) of section 10-76a and for other exceptional children for whom provision of special education is not required by law. . . ."

[3] General Statutes § 10-76a (a) provides: " 'Special education' means specially designed instruction developed in accordance with the regulations of the commissioner, subject to approval by the state board of education offered at no cost to parents or guardians, to meet the unique needs of a child with a disability, including instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings and instruction in physical education and special classes, programs or services, including related services, designed to meet the educational needs of exceptional children."

Section 10-76d-11 of the Regulations of Connecticut State Agencies directs each local board of education to "establish policies and procedures for developing, implementing, reviewing, maintaining and evaluating an individualized education program for each child requiring special education and related services. . . ."

Section 10-76a-1 (k) of the Regulations of Connecticut State Agencies defines "[i]ndividualized education program" as "a separate written plan for each child which shall be developed by a planning and placement team to meet the needs of each child requiring special education and related services."

[4] For purposes of this opinion, "gifted children" refers to those children identified in General Statutes § 10-76a (e) (2).

[5] Deborah Broadley is Neil Broadley's mother. For purposes of this opinion, we will refer to Neil Broadley as the plaintiff.

[6] The trial court also granted the motion for summary judgment of the Waterbury board of education against Timothy Croce, a Waterbury public school student, and his parents. Timothy Croce and his parents have not appealed from the judgment of the trial court, and, therefore, neither they nor the Waterbury board of education are parties to this appeal.

cluding that gifted children do not have a right to special education under the Connecticut constitution. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The material facts are not in dispute.[7] The plaintiff resides in the city of Meriden and attends public school there. The defendant Meriden board of education (school board) is responsible for providing education to children who reside in the city of Meriden. In 1986, when the plaintiff was in kindergarten, he was identified by his school as gifted. Since that time, his parents have demanded that the school board provide him with a program of special education designed to meet his individual needs. Although the plaintiff has received some individualized attention in addition to his school's regular educational program, the school board has refused to provide the plaintiff with an individualized program of special education. Each year, the plaintiff has become bored and frustrated with school.

The plaintiff contends that he has a state constitutional right to receive a program of education specially designed to meet his individual needs as a gifted child. His constitutional claim is based upon the statutes that establish a program of special education for certain Connecticut schoolchildren. General Statutes § 10-76a et seq. That statutory scheme identifies a category of "exceptional" children who need a program of special

---

[7] "In evaluating the propriety of a summary judgment, we are confined to an examination of the pleadings and affidavits of the parties to determine whether (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law." *State* v. *Hossan-Maxwell, Inc.,* 181 Conn. 655, 657 n.1, 436 A.2d 284 (1980). Because the material facts are not in dispute, the sole issue in this appeal is whether the judgment of the trial court is correct as a matter of law.

education because they deviate "either intellectually, physically, socially or emotionally so markedly from normally expected growth and development patterns" that they are or "will be unable to progress effectively in a regular school program . . . ." General Statutes § 10-76a (c). This category of exceptional children includes two groups: (1) children whose rate of development is impeded by a disability (children with disabilities);[8] and (2) gifted children, whose rate of development is enhanced by their extraordinary learning ability or outstanding artistic talent. General Statutes § 10-76a (e). Special education is statutorily required, however, only for children with disabilities; General Statutes § 10-76d (b); and not for gifted children, who may be provided with a program of special education at the option of the local school board. General Statutes § 10-76d (c). The plaintiff claims that: (1) the legislature, by classifying gifted children as among those children who are unable to "progress effectively" without special education, has created for those children the right to special education under article eighth, § 1,[9] of the Connecticut constitution; and (2) gifted children have a right to special education commensurate with that of children with disabilities under article first, §§ 1[10] and 20,[11] of the Connecticut constitution. We do not agree.

---

[8] For purposes of this opinion, "children with disabilities" refers to those children identified in General Statutes § 10-76a (e) (1). See footnote 1.

[9] Article eighth, § 1, of the Connecticut constitution provides: "There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation."

[10] Article first, § 1, of the Connecticut constitution provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

[11] Article first, § 20, of the Connecticut constitution provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry or national origin."

## I

Connecticut schoolchildren have a state constitutional right to an education in our free public elementary and secondary schools. Conn. Const., art. VIII, § 1; see *Campbell* v. *Board of Education,* 193 Conn. 93, 105, 475 A.2d 289 (1984); *Horton* v. *Meskill,* 172 Conn. 615, 647, 376 A.2d 359 (1977). The plaintiff concedes, however, that the Connecticut constitution does not, standing alone, afford gifted children the right to a program of special education. He also concedes that gifted children have no state statutory right to special education, because the legislature has not mandated such a course of study for gifted pupils. The plaintiff claims, rather, that his fundamental right to a free public education includes the right to a program of special education that enables him to "progress effectively,"[12] as that term is used in General Statutes § 10-76a (c), because the legislature has acknowledged that gifted children cannot achieve effective progress without a program of special education. We reject the plaintiff's argument because it is contrary to the intent and purpose of the statutory scheme.

"The meaning to be given a statute is determined by legislative intent and that legislative intent must be determined by language actually used in the legislation." *Eason* v. *Welfare Commissioner,* 171 Conn. 630, 634, 370 A.2d 1082 (1976), cert. denied, 432 U.S. 907, 97 S. Ct. 2953, 53 L. Ed. 2d 1079 (1977); *Demar* v. *Open Space & Conservation Commission,* 211 Conn. 416, 425, 559 A.2d 1103 (1989). In determining the meaning of a statute, "the statute must be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation."

---

[12] The term "progress effectively" is not defined in either the special education statutes or the regulations promulgated thereunder.

*American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 193, 530 A.2d 171 (1987); *Demar* v. *Open Space & Conservation Commission,* supra. Moreover, "the legislature is presumed to have intended a reasonable, just and constitutional result"; *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 187, 592 A.2d 912 (1991); *Moscone* v. *Manson,* 185 Conn. 124, 128, 440 A.2d 848 (1981); and "we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." *Bartholomew* v. *Schweizer,* 217 Conn. 671, 675–76, 587 A.2d 1014 (1991).

Applying these well established rules of statutory construction to our special education statutes, we conclude that the legislature did not intend to create a right to special education for gifted children. Although the language of § 10-76a (c) includes gifted children as among those exceptional children who do not "progress effectively" without special education, § 10-76d (b) and (c) manifest the unambiguous intent of the legislature that special education is mandatory only for children with disabilities and not for gifted students.[13] Indeed, there is not the slightest suggestion in the legislative history of the special education statutes that the legislature, in establishing a program of special education, sought either to define the parameters of the state constitutional right to a free public education, or to constitutionalize any particular kind of educational program for exceptional children.[14] We are obligated,

---

[13] That the legislature did not intend to create any entitlement to special education is also reflected in the legislative history of our special education statutes. See 12 S. Proc., Pt. 4, 1967 Sess., pp. 1959–61; 12 H.R. Proc., Pt. 10, 1967 Sess., pp. 4798–4801. For example, Representative Mary B. Griswold, testifying in favor of the special education legislation, stated: "For the gifted children, this bill *allows* towns to give *voluntary* special education but it does *not mandate this.*" (Emphasis added.) 12 H.R. Proc., Pt. 10, 1967 Sess., p. 4799.

[14] Having decided that the legislature did not intend to create a right to special education for gifted children under article eighth, § 1, of the Con-

moreover, to uphold the constitutionality of a statute when we may reasonably do so in a manner consistent with the intent of the legislature. *Bartholomew* v. *Schweizer,* supra, 217 Conn. 675–76. In these circumstances, when neither the legislature nor the framers of our constitution have vested in gifted children any right to an individualized education program, we cannot conclude that the plaintiff's right to a free public education under article eighth, § 1, of the Connecticut constitution includes a right to a special education program.

## II

The plaintiff next argues that the legislature's failure to mandate a program of special education for gifted children violates the plaintiff's rights under the equal rights provision, article first, § 1, and the equal protection provision, article first, § 20, of the Connecticut constitution. This claim is also without merit.

The equal protection provisions of our state constitution require "the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged."[15] *Reynolds* v. *Sims,* 377 U.S. 533, 565, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964); *Franklin* v. *Berger,* 211 Conn. 591, 594, 560 A.2d 444 (1989). We recognize, however, that the legislature has broad discretion in the exercise of its power to legislate, and that "[i]n areas of social and economic policy, a statutory classification that neither proceeds along

necticut constitution, we need not address the question of whether the legislature, consistent with the separation of powers provisions of article second of our state constitution, could have created a constitutional right to special education for gifted children through legislation rather than by constitutional amendment pursuant to article twelfth of the state constitution.

[15] "The equal protection provisions of the federal and state constitutions have the same meaning and limitations." *Keogh* v. *Bridgeport,* 187 Conn. 53, 66, 444 A.2d 225 (1982); *Franklin* v. *Berger,* 211 Conn. 591, 594 n.5, 560 A.2d 444 (1989).

suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Federal Communications Commission* v. *Beach Communications, Inc.,* U.S. , 113 S. Ct. 2096, 2101, 124 L. Ed. 2d 211 (1993); *State* v. *Reed,* 192 Conn. 520, 531, 473 A.2d 775 (1984).[16]

The plaintiff acknowledges that the needs and abilities of gifted children and children with disabilities are sufficiently different that the legislature could reasonably have decided to treat them differently. He contends, nonetheless, that because the legislature has identified a characteristic common to both groups, namely, the need for special education in order to "progress effectively" in school, gifted children and children with disabilities are equally entitled to receive a program of special education under the state constitution. This argument, however, ignores the concededly significant differences between the two groups of students that inform the legislative decision to mandate a program of special education for children with disabilities but not for gifted children. As long as the disparate treatment is, as here, rationally based, we may not judge the wisdom, desirability or logic of the legislative determination; *Heller* v. *Doe,* U.S. , 113

---

[16] Statutes impinging upon fundamental rights or establishing suspect classifications "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." *Cleburne* v. *Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985); *Horton* v. *Meskill,* supra, 172 Conn. 640. We have already determined, however, that the plaintiff's fundamental right to an education in the free public elementary and secondary schools of this state does not include the right to a program of special education; see part I; and the plaintiff does not claim that gifted students comprise a suspect class. We must determine, therefore, only whether the distinctions drawn by the challenged legislation bear some rational relationship to a legitimate state interest. *Federal Communications Commission* v. *Beach Communications, Inc.,* supra, 113 S. Ct. 2101; *State* v. *Reed,* supra, 192 Conn. 531.

S. Ct. 2637, 2642, 125 L. Ed. 2d 257 (1993); *Federal Communications Commission* v. *Beach Communications, Inc.,* supra, 113 S. Ct. 2101; even where the legislature has not expressly articulated the purpose or rationale underlying its enactment. *Nordlinger* v. *Hahn,* U.S. , 112 S. Ct. 2326, 2334, 120 L. Ed. 2d 1 (1992). We conclude, therefore, that our special education statutes do not violate the plaintiff's state constitutional right to the equal protection of the law.

The judgment is affirmed.

In this opinion the other justices concurred.