[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#104)
CT Page 2777
The plaintiff, IBM Credit Corp., filed, on March 14, 1994, a one count complaint seeking payment on a lease against the defendant, Mark Facey Co. The plaintiff alleges that the defendant and the plaintiff entered into a Term Lease Master Agreement, on December 11, 1991, which set the terms and conditions pursuant to which the defendant leased a computer and related equipment for 60 months under a Term Lease Supplement. The plaintiff further alleges that the defendant has defaulted on the lease agreement and owes the accelerated rental amounts due February 1, 1993, and thereafter. The defendant filed its answer and special defenses on May 31, 1994. The special defenses of the defendant allege unconscionability, breach of warranty, fraud, payment, satisfaction, and cancellation. The defendant alleges in its special defenses that the plaintiff was an agent or partner of International Business Corporation (IBM) and Informational Management Associates, Inc. (IMA). The defendant further alleges that the Term Lease Master Agreement and the Term Lease Supplement were the financing component through which IBM and IMA sold the computer equipment and software to automate the defendant's business. The defendant then alleges that IBM and IMA represented and warranted that the equipment would fit the defendant's needs, but the equipment failed to meet those needs.
On October 17, 1994, the plaintiff filed a motion for summary judgment on the ground that there is no genuine issue of material fact the defendant owes the amount due under the lease. The plaintiff also filed a supporting memorandum of law, an affidavit of Donna Vuolo, a Customer Contract Representative of IBM, a copy of the lease and term lease supplement, an affidavit of Andrea Stewart, a restructuring analyst of the plaintiff, notification to the defendant of default, and calculations of the amount due under the lease. The defendant filed a memorandum in opposition to the plaintiff's motion for summary judgment on November 9, 1994, along with an affidavit of Mark Facey, President of Mark Facey Co., and correspondence between the plaintiff and defendant. The plaintiff filed a reply memorandum in support of its motion on December 22, 1994. The defendant filed an objection, on December 27, 1994, to the plaintiff's reply memorandum because it was unsolicited, and filed a "rebuttal" to that memorandum.
"Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material CT Page 2778 fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Suarez v. DickmontPlastics Corp., 229 Conn. 9, 105, 639 A.2d 507 (1994). "Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Haesche v. Kissner, 229 Conn. 213,217, 640 A.2d 89 (1994). "`In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts.'" Id.
The plaintiff argues that the defendant has defaulted on the lease and that the special defenses raised are inapplicable as § 8 of the lease agreement provides that payment is not subject to such defenses. The defendant maintains that there are issues of fact as to the relationship between the plaintiff and IBM and IMA. The defendant further contends that the lease was unconscionable, that fraudulent inducement on the part of IBM and IMA is imputed to the plaintiff, that the lease was terminated, that the computer system was never accepted, that the plaintiff did not mitigate its damages, and that by removing the system the defendant's obligations were satisfied.
"A finance lease differs considerably from an ordinary lease, which typically involves only a lessor and a lessee, because it involves an additional party, the equipment supplier or manufacturer. Because the finance lessor is strictly a financing entity, the lessee ordinarily must look to that additional party for warranty liability. `In effect, the finance lessee . . . is relying upon the manufacturer . . . to provide the promised goods and stand by its promises and warranties; the [lessor] is only a finance lessor, and deals largely in paper, rather than in goods. In that situation, it makes no sense to treat the [lessor] as a seller to the [lessee] with warranty liability, nor does it make any sense to free the manufacturer . . . from liability for breach of promises and warranties that it would have given in an outright sale to the [lessee]. Usually, the [lessor] expects to be paid, even though the [product] might prove to be defective or totallyunsuitable for the [lessor's] particular business. Thus, a finance lease is a very different animal from an ordinary lease."' (Emphasis added.) Emlee Equipment Leasing v. WaterburyTransmission, 31 Conn. App. 455, 466, 626 A.2d 307 (1993). CT Page 2779
The plaintiff argues that the defendant's defenses are inapplicable under § 8 of the Term Lease Master Agreement which provides:
 8. LEASE NOT CANCELLABLE; LESSEE'S OBLIGATIONS ABSOLUTE. Lessee's obligation to pay shall be absolute and unconditional and shall not be subject to any delay, reduction, set-off, defense, counterclaim or recoupment for any reason whatsoever, including any failure of the Equipment, Programming or licenses program materials or any representations by IBM. If the Equipment, Programming or licensed program materials are unsatisfactory for any reason, Lessee shall make any claim solely against IBM and shall nevertheless, pay Lessor all amounts payable under the lease.
The Appellate Court, quoting, 1A J. White R. Summers, Uniform Commercial Code (3d Ed. 1988), has delineated the characteristics of finance leases, and clauses such as the one above, known as a "hell or high water clause." "The parties can draft a lease agreement that carefully excludes warranty and promissory liability of the finance lessor to the lessee, and that sets out what is known as a hell or high water clause, namely, a clause that requires the lessee to continue to make rent payments to the finance lessor even though the [equipment] is unsuitable,
defective, or destroyed. How the lessee is to be assured that it will enjoy the benefit of the promises and warranties made by the manufacturer may be less obvious, but that too can be accomplished through a clause in the agreement between the manufacturer and the finance lessor to the effect that the warranties and other promises in the agreement will run to the benefit of the lessee. Thus, the finance lessee becomes a third party beneficiary of the contract between the supplier and the finance lessor. . . . After all, the parties have actually entered into a financing transaction in which the lessor is really lending money and dealing largely in paper rather than in goods. Put another way, the lessor as lender has no interest in how the lessee as debtor choose to spend the money for goods. If the lessee should order an aircraft which is unsuitable or defective, this is not the lessor's problem. The lessor's responsibility is merely to provide the money, not to instruct the lessee like a wayward child concerning a suitable purchase." (Citation omitted; emphasis added; internal quotation marks CT Page 2780 omitted.) Emlee Equipment Leasing v. Waterbury Transmission,
supra, 31 Conn. App. 468-69. The Appellate Court used this description as a backdrop against which it considered the defendant's defenses. Id., 469.
The defendant argues, in the present case, that the computer equipment was not suitable to automate its business, that IBM and IMA knew that the equipment was unsuitable, that the plaintiff was in a partnership, agency or joint venture with IBM and IMA, and that enforcement of the lease would be unconscionable.
"[U]nconscionability is a matter of law to be decided by the court . . ." Id., 461. The terms and conditions provided by the Term Lease Master Agreement demonstrate that the lease in question is a finance lease. The defendant has alleged a relationship between the plaintiff and IBM and IMA but has provided no evidence to support that assertion. The allegations of the defendant's special defense demonstrate that any representations and warranties made in regard to the equipment were made by IMA and IBM. Furthermore, the defendant also alleges in its first special defense that the Term Lease Master Agreement and the Term Lease Supplement were the financing component. Moreover, while IBM and the plaintiff may have a corporate relationship "it is a fundamental principle of corporate law that `the parent corporation land its subsidiary are treated as separate and distinct legal persons . . . ." SFA Folio Collections, Inc. v. Bannon, 217 Conn. 220,232, 585 A.2d 666, cert. denied, 501 U.S. 1223,111 S.Ct. 2839 (1991). The defendant has made no allegations that the plaintiff made any warranties or representations, or provided any evidence that shows that the plaintiff performed anything other than a financial role. The Appellate Court has determined that clauses in a finance lease that disclaim all warranties are generally enforceable if, for example, the lessee has an adequate remedy against the supplier, and if the lessor had no active dealings in the manufacture or selection. Emlee Equipment Leasingv. Waterbury Transmission, 31 Conn. App. 471. Section 9 of the Term Lease Master Agreement grants to the lessee the benefit of all warranties made by IBM in the purchase agreement, and § 6 charges the lessee with the responsibility of equipment. Furthermore, "[c]ourts do not generally find contracts unconscionable where the parties are businesspersons." Id., 465. Therefore, the enforcement of the lease is not unconscionable as the defendant has an adequate remedy against the manufacturer.
In its second and third special defenses the defendant alleges CT Page 2781 that the system was not as warranted and represented, and that IBM's and IMA's statements about the abilities of the system were false and constituted fraud. In its fifth and sixth special defenses the defendant alleges that the plaintiff, IBM and IMA breached their agreements with the defendant, the defendant requested that the equipment be removed and notified IBM, IMA and the plaintiff, and that the equipment did not conform to the representations of IBM and IMA, and therefore the defendant's obligations have been satisfied and terminated.
The allegations of the defendant are directed towards IBM and IMA, and not towards the plaintiff, despite the defendant's argument that the fraud can be imputed to the plaintiff. The defendant has provided no evidence that the plaintiff made any representations or warranties; as discussed above, the Term Lease Master Agreement disclaims warranties by the plaintiff as to the equipment, and provides that the lease is not cancellable. The defendant has given no evidence of a breach of an agreement by the plaintiff, and any breach by IBM and IMA does not affect the defendant's obligations under the lease agreement. The defendant's notification to the plaintiff that the equipment failed to conform to its needs also does not relieve the defendant of its obligations as agreed to in § 8 of the Term Lease Master Agreement. Therefore, these special defenses are inapplicable to the plaintiff.
In its fourth special defense, the defendant argues that it paid the agreed rent until February 1993, and then the plaintiff took possession of the computer system, and therefore, its obligations have been satisfied.
The plaintiff has provided an affidavit of Andrea Stewart, a restructuring analyst employed by the plaintiff, which states that the equipment was repossessed on February 28, 1994, and that the estimated fair market value of the equipment as of March 1, 1994, was subtracted off of the amount due. The defendant has offered no evidence of its own to show that the return of the equipment fully satisfied the amount due under the lease.
The defendant also maintains that Emlee is distinguishable in that the leasing company and supplier were not related, the lessee accepted the equipment, and there was equal bargaining power.
As discussed above, the defendant has presented no evidence showing that the plaintiff provided a service that was different in any manner from that provided by the lessor in Emlee. The CT Page 2782 defendant also argues that Article 2A of the Uniform Commercial Code allows for rejection of goods after the lessee has had a reasonable period of inspection. However, as noted by the defendant, Article 2A has not been adopted by Connecticut, and, while the court in Emlee found it "instructive" in its description of the characteristics of a finance lease, the court's decision did not adopt the provisions of the article wholesale. Therefore, the defendant's obligations under the lease are unaffected by its acceptance or rejection of the equipment. The defendant further argues that the plaintiff and defendant did not have equal bargaining power because the computer system was more technically sophisticated than the pipe-bending machine in Emlee, therefore, the defendant relied more upon the representations of IBM and IMA. However, as discussed above, the representations of IBM and IMA are inapplicable to the lease agreement between the plaintiff and the defendant. Moreover, it is not clear how representations of IBM and IMA would have an influence on the bargaining power between the plaintiff and the defendant.
The plaintiff has presented evidence that this was a finance lease entered into between the plaintiff and the defendant, the defendant defaulted on that lease, and the plaintiff now seeks to recover. The evidence produced by the defendant pertains to warranties and representations made by IBM and IMA, who are not parties to this suit. Accordingly, the plaintiff's motion for summary judgment is granted.
KARAZIN, J.