[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: AWARD OF PREJUDGMENT INTEREST
On May 21, 1991, the plaintiff, Sara Gladstone, filed a one count complaint against the defendants, Gloria and William Grinnan, for injuries sustained as a result of Gloria Grinnan' s negligent operation of a motor vehicle. On March 1, 1995, the jury returned a verdict awarding the plaintiff economic and noneconomic damages in the total amount of $7,400,000. Thereafter, on March 6, 1995, the plaintiff requested a computation of prejudgment interest pursuant to General statutes § 52-192a[1] and Practice Book § 350.
The plaintiff requests prejudgment interest in light of an offer of judgment made by the plaintiff on November 25, 1991. On March 31, 1995, the defendants filed an objection to the request for prejudgment interest. The plaintiff filed a memorandum in support of her request on May 25, 1995, to which the defendants CT Page 14125 filed a reply memorandum on June 9, 1995. On November 8, 1995, the plaintiff filed a supplemental motion concerning an award of prejudgment interest pursuant to General Statutes § 52-192a
and Practice Book § 350, and an award of postjudgment interest pursuant to General Statutes § 37-3b. On November 20, 1995, the defendants filed a memorandum supporting in part and opposing in part the plaintiff's supplemental motion. In response, on November 21, 1995, the plaintiff filed a reply memorandum concerning awards of prejudgment and postjudgment interest.
The issues presented by the parties in their memoranda in support of and in opposition to the request for prejudgment interest arise out of the terms of the plaintiff's offer of judgment and the application of General Statutes § 52-192a.
Plaintiff's November 25, 1991 offer of judgment stated: "The plaintiff in the above captioned action, pursuant to sections 345 et seq., Connecticut Practice Book, hereby offers to settle the claim underlying this action in return for a payment of FIFTY THOUSAND ($50,000.00) Dollars. Specifically, plaintiff offers to stipulate that damages resulting from defendants' negligence are in the amount of FIVE MILLION ($5,000,000.00) Dollars. Plaintiff further offers to stipulate that the sum of $155,179.17, representing collateral medical benefits paid by CHCP, should be deducted from such damages, and that judgment should enter in the amount of $4,844,020.83. Plaintiff further offers to provide to defendants a full Satisfaction of Judgment in return for a payment of only $50,000.00. Plaintiff further offers as part of said judgment, to stipulate that, if any judgment is entered against either of defendants in the case of Sara Gladstone vs. Southern New England Telephone vs. Gloria Grinnan Civil No. 391CV00306 (WWE), United States District Court, District of Connecticut, plaintiff will not attempt to or satisfy that judgment against defendants herein."
The defendants object to the imposition of any prejudgment interest on the ground that the offer of judgment was invalid. The defendants claim that the terms of the offer are not in compliance with General Statutes § 52-192a and Practice Book §§ 345 through 350 because the offer contains a condition. The defendants argue that the offer to settle the case for $50,000 was conditioned upon a stipulation between the parties that damages were $5,000,000, less collateral sources. Thus, according to the defendants, there was no offer to stipulate to a judgment CT Page 14126 for a "sum certain" as required by § 52-192a.
The defendants claim that the plaintiff sought the condition to limit the impact of the settlement of this case upon other litigation brought by the plaintiff in federal court. At the time of the offer, an action by Gladstone was pending in federal court against Southern New England Telephone Company (SNET). SNET filed a third party complaint against the Grinnans. The defendants point out that, although the plaintiff offered to stipulate that she would not attempt to satisfy any judgment entered in the federal action against the defendants herein, SNET could nonetheless seek to recover against the defendants if SNET was successful in the third party action. Thus, the defendants argue that acceptance of the offer to settle the claim for payment of fifty thousand dollars and to stipulate to damages of five million dollars could have exposed them to liability in other pending litigation.[2]
The defendants also argue that allowing a party to place a condition on an offer of judgment frustrates the purpose of §52-192a by creating a disincentive to settle on the basis of factors other than the value of the case. In addition, the defendants argue that § 52-192a is punitive in nature and therefore must be strictly construed. Applying this principle, the defendants argue that because there was no offer to settle the case for a "sum certain" as provided in the statute, the offer was not valid and the plaintiff's request for prejudgment interest should be denied.
In the plaintiff's memorandum in support of her request for prejudgment interest, she claims that the offer of judgment was valid under § 52-192a and Practice Book § 346. The plaintiff argues that the statute requires her to offer "to stipulate to a judgment for a sum certain." The plaintiff points out that the language of the offer stated that "judgment should enter in the amount of $4,844,020.83." Thus, the plaintiff argues that the offer complies with § 52-192a. The plaintiff contends that "[t]he fact that plaintiff offered also to allow defendants to satisfy the stipulated judgment by paying a lesser amount did not make her offer of judgment invalid." The plaintiff also argues that the offer to stipulate to a judgment of $4,844,020.83 was unconditional. She states that there were no conditions the defendant had to meet or obligations the defendant had to undertake to accept the offer. The plaintiff contends that the defendants misinterpreted the plaintiff's offer to be an CT Page 14127 offer for a judgment of $50,000, conditioned upon a stipulation of damages in the amount of $4,844,020.83. This interpretation, the plaintiff argues, is belied by the clear wording of the plaintiff's offer.
Finally, the plaintiff claims that the defendants do not explain how acceptance of the offer of judgment would have exposed them to liability in the federal litigation. The plaintiff argues that the claim for contribution against the Grinnans would have been determined by the plaintiff's recovery from SNET, not by the amount the defendants agreed to pay the plaintiff.
In the defendants' reply memorandum, they present a statutory construction argument regarding the portion of § 52-192a
which states that "the plaintiff may . . . file . . . a written `offer of judgment' . . . offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain." The defendants propose that the phrase "sum certain" modifies both the phrase "stipulate to a judgment" and the phrase "offering to settle the claim underlying the action." The defendants claim that this construction of the wording of the statute supports the notion that the legislature did not intend to allow a plaintiff to offer to stipulate to a judgment for a sum certain and at the same time offer to settle the claim for a different sum certain.
The defendants also claim that § 52-192a and Practice Book §§ 345 through 350 are unconstitutional. The defendants claim that General Statutes § 52-192a and Practice Book §§ 345 through 350 violate the equal protection, due process and jury trial rights embodied in the Fourteenth Amendment of the United States Constitution and Article First, §§ 1, 8, 10, 19
and 20 of the Connecticut Constitution.[3]
With respect to the equal protection and due process claims, the defendants argue that there is disparity in the way plaintiffs and defendants are treated under Connecticut's offer of judgment statutes.[4] Under the operation of § 52-192a, regarding offers of judgment by plaintiffs, if the defendant fails to accept an offer, and the plaintiff receives a verdict equal to or greater than the plaintiff's offer, the plaintiff is entitled to 12 percent interest on the amount recovered, in some cases, from the date the complaint was filed. The court may also award attorney's fees in an amount not to exceed $350. Under § 52-195(b), however, if the plaintiff does not accept an offer of judgment made by the defendant, and the verdict in favor CT Page 14128 of the plaintiff is less than the sum offered, the plaintiff must pay the defendant's costs accruing after the plaintiff's receipt of notice of the offer of judgment. Such costs may include reasonable attorney's fees in an amount not to exceed $350. The defendants argue that there is no rational basis for the disparity in treatment of plaintiffs and defendants under the statutes and even suggest that the distinction is arbitrary.
The defendants also claim that the statutes infringe on the right to trial by jury under Article First, § 19 of the Connecticut Constitution. They argue that while reasonable conditions may be put on the right, the conditions may not adversely affect the substance of the right. The defendants maintain that the provisions of § 52-192a are unduly burdensome in that defendants must risk having to pay interest, including for a period prior to the date the offer was filed, to maintain their right to trial by jury. The defendants state that the right to a trial by jury is a fundamental right, thereby requiring the court to apply a heightened level of scrutiny to the defendants' equal protection and due process claims. The defendants, however, do not engage in an analysis of their claims under the standard of review they invoke.
The plaintiff argues that § 52-192a is constitutional and that the defendants have not met their burden of proving the unconstitutionality of the statute beyond a reasonable doubt. The plaintiff cites numerous cases from Connecticut and other jurisdictions, both federal and state, which uphold the constitutionality of prejudgment interest statutes generally.
With respect to the claimed disparity in treatment between plaintiffs and defendants under the prejudgment interest statutes, the plaintiff argues that the economic situation of plaintiffs and defendants is different and therefore the incentives necessary to promote settlement must be different. According to both the plaintiff and the defendants, the legislative history of the statute indicates that one purpose of the act is to discourage insurance companies from refusing to settle cases and instead investing and earning a return on money otherwise available for settlement. Thus, the plaintiff argues, the legislature may treat the parties differently so as to promote the legitimate goals of setting litigation and conserving judicial resources.
The plaintiff argues that the defendants do not have standing CT Page 14129 to raise a claim that their right to a jury trial was violated since the prejudgment interest statutes did not foreclose the defendants' right to a trial in this case.
An award of interest under § 52-192a is mandatory where the statutory requirements are met. Lutynski v. B. B. J.Trucking, Inc., 31 Conn. App. 806, 812, 628 A.2d 1 (1993), aff'd,229 Conn. 525, 528, 642 A.2d 7 (1994).[5] Prejudgment interest is to be awarded by the trial court when a valid offer of judgment is filed by the plaintiff within eighteen months of the filing of the complaint, the offer is rejected by the defendant, and the plaintiff ultimately recovers an amount greater than the offer of judgment after trial. Loomis Institute v. Town ofWindsor, 234 Conn. 169, 180, 661 A.2d 1001 (1995); Lutynski v.B. B. J. Trucking, Inc., supra, 812; Gillis v. Gillis,21 Conn. App. 549, 554, 575 A.2d 230, cert. denied, 215 Conn. 815,576 A.2d 544 (1990).
The last two prongs of the test have been met. First, the defendant rejected the offer by not accepting it within thirty days. See General Statutes § 52-192a(b); Bower v. Ausmus,
Superior Court, judicial district of New Haven, Docket No. 262614 (January 28, 1993, Gray, J.) (stating that failure of the defendants to accept an offer of judgment within the thirty day period following the filing of the offer means that the offer is deemed rejected by operation of law). Secondly, the amount recovered, $7,400,000, was above both the $4,844,020.83 and the $50,000 amounts specified in the offer. Thus, the determinative issue is whether the plaintiff filed a valid offer of judgment.[6]
There is a paucity of case law in Connecticut involving the terms of offers of judgment. In Armfield v. Hartford Hospital,
Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 355415 (August 11, 1992, Wagner, J.), the defendant filed an offer of judgment in the amount of $60,000. The plaintiff was awarded a verdict of $60,117.88, which was reduced to $53,469.48 after correction for the stipulated amount of collateral source payments. The defendant moved for a bill of costs pursuant to General Statutes § 52-193, et seq. and Practice Book § 344. The plaintiff objected on the ground that the offer was invalid because it was conditional. The offer contained the language "`on the condition that the plaintiff files a withdrawal of action against the remaining defendants . . . .'" The court denied the motion for the bill of CT Page 14130 costs holding that "no recovery of costs may be had under General Statutes 52-195(b) based on an offer of judgment containing conditions or terms other than an offer of money."
There is no authority from other jurisdictions involving an offer of judgment similar to the one in this action. However there are cases from other jurisdictions which are instructive in resolving the present issue.[7]
In Stockton Kenworth, Inc. v. Mentzer Detroit Diesel, Inc.,705 P.2d 145 (Nev. 1985), the court held invalid a defendant's offer of judgment which provided that the defendant would pay $10,000 to the plaintiff upon receipt of good title to a vehicle at issue in the suit. Id., 148. The court interpreted the offer requiring the plaintiff to obtain good title to the vehicle as a condition precedent to receiving payment. On this basis, the court held that the offer was indefinite and conditional, stating that "the offer must be for a definite or ascertainable amount so that the parties can be unequivocally aware of what the defendant is willing to pay for his peace." Id. In Lentz v. I.D.S.Financial Services, Inc., 890 P.2d 783 (Nev. 1995), the court held that the defendants' offer to allow judgment to be taken against them for $20,000, to be apportioned equally between two plaintiffs, was invalid. Id., 785. The court concluded that the offer of judgment, although not expressly conditioned on both plaintiffs' acceptance, could only be fairly read as in fact being so conditioned. Id., 784. See also Bush Leasing, Inc. v.Gallo, 634 So.2d 737, 741-42 (Fla.Dist.Ct.App. 1994) (stating that "[a]n offer of judgment that contains conditions not permitted by the statute and which will not allow immediate enforcement upon acceptance is invalid.").
These cases demonstrate the reluctance of courts to enforce offers of judgment which contain express or implied conditions. Courts disfavor conditional offers of judgment because such offers thwart the purpose of the offer of judgment statutes. The purpose of § 52-192a is to encourage settlement. Civiello v.Owens-Corning Fiberglass Corp., 208 Conn. 82, 91, 544 A.2d 158
(1988); Cox v. Peerless Insurance Co., 774 F. Sup. 83, 86 (D. Conn. 1991). The prejudgment interest award "provides an additional incentive to settle a lawsuit and avoid a trial in certain cases by imposing an increased penalty upon a nonsettling litigant." Id.
Offers of judgment "have been likened to contract offers in CT Page 14131 that there must be a `meeting of the minds' and a clear understanding of the terms in order to have a[n] acceptance of the offer."[8] (Internal quotation marks omitted.). Fleischerv. August, 737 P.2d 518, 521 (Nev. 1987). Otherwise, a party "cannot make a meaningful choice between accepting the offer or continuing the litigation to judgment." Bergmann v. Boyce,856 P.2d 560, 565 (Nev. 1993) (holding unapportioned offers of judgment invalid regardless of the outcome of the trial on the merits.); Arkla Energy Resources v. Roye Realty Development,Inc., 9 F.3d 855, 867 (10th Cir. 1993) (holding that the defendant was not entitled to invoke Rule 68 with an ambiguous offer "because the offeree must know what is being offered in order to be responsible for refusing the offer . . . ."); Said v.Virginia Community University/Medical College, 130 F.R.D. 60, 63
(E.D. Va. 1990) (stating that "[b]ecause of the difficulty of the choice that an offer of judgment requires a claimant to make, it is essential that he be able to discern with certainty what the precise terms of that offer are.").
The defendants contend that the plaintiff's offer of judgment in the present case may be read to contain a condition namely, that the plaintiff would accept payment of $50,000 in settlement of the case on the condition that the defendant stipulate to damages of $4,844,020.83. The plaintiff asserts that the offer was not conditional because it does not require the plaintiff to undertake any obligation to accept the offer, other than to stipulate to a judgment for a sum certain, $4,844,020.83. The plaintiff asserts that the offer was not indefinite. She argues that because the offer specifies a dollar amount it complies with the "sum certain" requirement of § 52-192a.
"In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.). Ford Motor Credit Co. v. B.W. Beardsley, Inc.,208 Conn. 13, 20, 542 A.2d 1159 (1988); Nickel Mine Brook Associatesv. Joseph E. Sakel, P.C., 217 Conn. 361, 370-71, 585 A.2d 857
1210 (1991). "Statutes must be construed, if possible, that absurdity and mischief may be avoided." (Internal quotation marks omitted.). Ford Motor Credit Co., supra, 20. The statute states that the plaintiff may offer "to settle the claim underlying the action and to stipulate to a judgment for a sum certain." General Statutes § 52-192a(a). In the case at bar, the sum certain was $4,844,020.83; $5,000,000 minus the collateral source deduction of $155,179.17. CT Page 14132
Chief Justice Peters has instructed that § 52-192a is remedial legislation and its provisions should not be interpreted to undermine its broad statutory intention. See Gionfriddo v.Avis Rent A Car System, Inc., 192 Conn. 301, 305-06, 472 A.2d 316
(1984). Chief Justice Dupont has written that § 52-192a is admittedly punitive in nature; that it is the punitive aspect of the statute that effectuates the underlying purpose of the statute and provides the impetus to settle cases; and, that the purpose of the act is to encourage early, fair and reasonable settlements, and to encourage plaintiffs to make offers of judgment promptly. See Lutynski v. B. B. J. Trucking, Inc.,
supra, 31 Conn. App. 814-16. In the instant case, the plaintiff's offer of judgment was filed within six months of the filing of the complaint; three years and three months later, the jury returned its verdict.
In Kusha v. Respondowski, 3 Conn. App. 570, 574,490 A.2d 1014 (1985), Justice Hull, then speaking for the Appellate Court, reiterated the purpose of § 52-192a, "the promotion of settlements in cases so as to unclog an overloaded docket." InKusha, the Appellate Court reversed the trial court's refusal to award prejudgment interest, reasoning: "Had [the defendants] accepted [the offer], they would have shortened the course of this action by at least three years and would have paid less in damages as well." Id. "To deny the plaintiff an award of interest under such circumstances is clearly contrary to the intent behind General Statutes § 52-192a." Id.
This court finds that the offer of judgment was valid because it was in a form that would allow the defendant the opportunity to assess the risks attendant to rejection or acceptance of the offer. The offer cannot be interpreted as containing a condition or as containing ambiguous terms. The terms of the offer have a definite and precise meaning, "unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion." Christian v. R. Wood Motors,Inc., No. 91-C-1348, 1995 WL 238981, at *6 (N.D.N.Y. April 21, 1995). The court must adopt a construction of § 52-192a which best furthers its objective, which is to encourage settlements. See Civiello v. Owens-Corning Fiberglass Corp., 208 Conn. 82, 91,544 A.2d 158 (1988); Builders Service Corp. v. Planning ZoningCommission, 208 Conn. 267, 276, 545 A.2d 530 (1988) (stating that a statute should not be interpreted to thwart its purpose). On this basis, the offer of judgment submitted by the plaintiff is CT Page 14133 valid under § 52-192a and the plaintiff's request for computation of prejudgment interest should be granted.
Having determined that the plaintiff's offer of judgment is valid under § 52-192a, it is necessary to reach the constitutional grounds raised by the defendants in their objection to an award of prejudgment interest. It is noted at the outset, however, that constitutional claims are only decided when a case cannot be decided on nonconstitutional grounds. Adolphsonv. Zoning Board of Appeals, 205 Conn. 703, 720, 535 A.2d 799
(1988); Maloney v. Pac, 183 Conn. 313, 324, 439 A.2d 349 (1981). "[A] trial court should be reluctant to act on the unconstitutionality of a statute unless it is quite apparent."Fleet Bank, N.A. v. Galluzzo, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No 0500250 (May 11, 1992, Corrigan, J.).
The defendants contest the constitutionality of § 52-192a
on the basis that it infringes on their federal and state constitutional right to access to the courts. In response, the plaintiff argues that the defendants do not have standing to raise this claim since there has been a jury trial in this case.[9]
"Standing is not a technical rule intended to keep aggrieved parties out of court, nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. See, e.g., Baker v.Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962);Stern v. Stern, 165 Conn. 190, 192, 332 A.2d 78 (1973). These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity.Maloney v. Pac, 183 Conn. 313, 320-21, 439 A.2d 349 (1981). The question of standing does not involve an inquiry into the merits of the case. It merely requires . . . [a party] to make allegations of a colorable claim of injury to an interest which is arguably protected or regulated by the statute or constitutional guarantee in question. Data Processing Service v. Camp,397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1969); Ducharme v.Putnam, 161 Conn. 135, 139, 285 A.2d 318 (1971)." (Internal quotation marks omitted.). Reitzer v. Board of Trustees of StateColleges, 2 Conn. App. 196, 199-200, 477 A.2d 129 (1984). CT Page 14134
Applying these concepts of standing, the defendants have made an allegation of an injury to an interest which is protected by the state and federal constitutions. The defendants, however, have not suffered a direct injury to their right to a trial by jury and they can no longer be said to be likely to suffer an injury to this right. The defendants in this action have been afforded their constitutional right to access to the court, indeed, to a jury trial. Having had a full adjudication of their interests in this action by a jury, the defendants lack standing to raise a claim that their right to court access has been infringed. The defendants' access to the courts under article first, § 10, was not hindered.
The defendants next contend that § 52-192a violates their right to equal protection under the Fourteenth Amendment of the United States Constitution and under the Connecticut Constitution Article First, § 20. They claim that the statute treats plaintiffs and defendants differently and that there is no rational basis for the disparity in treatment. In response, the plaintiff argues that there is a rational basis for the disparate treatment of plaintiffs and defendants and the defendants have not met their burden of proving the unconstitutionality of the statute beyond a reasonable doubt.
The fourteenth amendment to the United States constitution provides that "[n]o state shall . . . deny any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. Similarly, Article First, § 20, of the Connecticut Constitution, as amended, provides that "[n]o person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability." Conn. Const., amend XXI. The Connecticut Supreme Court "has many times noted that equal protection clauses of the state and federal constitutions have a like meaning and impose similar constitutional limitations." (Internal quotation marks omitted.). Barde v. Board of Trustees, 207 Conn. 59, 65,539 A.2d 1000 (1988).
The court must first determine the appropriate constitutional standard to apply to the defendants' equal protection claim. Bower v. D'Onfro, 38 Conn. App. 685, 693,663 A.2d 1061 (1995). The linchpin of the defendants' argument lies CT Page 14135 in their contention that, under § 52-192a, defendants must risk having to pay 12 percent interest on the amount of a plaintiff's recovery to maintain the jury trial right, whereas, under § 52-195b, plaintiffs are only liable for costs. The defendants maintain that this statutory scheme affects their fundamental right to trial by jury, thereby requiring the court to apply a heightened level of scrutiny to their equal protection claim.
"The equal protection provisions of . . . [the] state constitution require the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged." (Internal quotation marks omitted.). Broadley v.Board of Education, 229 Conn. 1, 8, 639 A.2d 502 (1994). "Statutes impinging upon fundamental rights or establishing suspect classifications `are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest.'" Id., n. 16, quoting Cleburne v.Cleburne Living Center, Inc., 473 U.S. 432, 440, 105 S.Ct. 3249,87 L.Ed.2d 313 (1985). "If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge."Ryszkiewicz v. New Britain, 193 Conn. 589, 597, 479 A.2d 793
(1984).
 Strict scrutiny is not the appropriate standard for three reasons. First, § 10 does not confer a fundamental right that merits strict scrutiny . . . Second, the defendants have not been denied the fundamental right of access to the courts, as discussed previously.[10] Third, the defendants have failed to identify any suspect class against which . . . [§ 52-192a] discriminates . . . . The group identified by the defendants is not the sort of "discrete and insular" minority for whom strict scrutiny is necessary to uphold its rights.
(Citation omitted; footnote added.). Bower v. D'Onfro, supra,38 Conn. App. 694.
The court must determine, therefore, only whether the distinctions drawn by the challenged legislation bear some rational relationship to a legitimate state interest. As long as CT Page 14136 the disparate treatment is rationally based, the court may not judge the wisdom, desirability or logic of the legislative determination. See Broadley v. Board of Education, supra,229 Conn. 8-10. Several Connecticut courts have found that an award of interest pursuant to § 52-192a is rationally related to the state's interest in promoting fair and reasonable compromise of litigation without trial. See Gillis v. Gillis, supra,21 Conn. App. 554; Fleet Bank v. Dowling, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 0446253 (January 14, 1992, Kremski, S T.R., 7 CSCR 283); Fleet Bank v.Galluzzo, supra; Raguskus v. Corbett, Superior Court, judicial district of New Haven, Docket No. 227460 (September 12, 1988, Reynolds, J., 3 CSCR 869). This court agrees, the equal protection clause of neither the federal nor state constitution has been violated by § 52-192a.
The defendants claim further that § 52-192a interferes with the right to a jury trial under article first, § 19 of the Connecticut Constitution. Section 19 of article first of the Connecticut Constitution provides: "The right of trial by jury shall remain inviolate . . . ." As discussed previously, the defendants have not successfully argued a violation of their § 19 rights because there was no interference with the jury's fact-finding function or the substance of the jury trial. Similarly, the defendants' due process complaints lack merit. The defendants have had their day in court. Additionally, following trial, the defendants have had heard several post-verdict motions, including this one.
An economic regulation, such as § 52-192a, survives the substantive due process test if it is rational and related to a legitimate state purpose. Fair Cadillac-Oldsmobile IsuzuPartnership v. Bailey, 229 Conn. 312, 319, 640 A.2d 101 (1994). The legitimacy of the state's interest is not contested here; the state's disparate treatment of plaintiffs and defendants is challenged. But even the defendants acknowledge a legislative intention behind § 52-192a, to discourage insurance carriers from delaying settlements while investing its reserves. The Constitution does not prohibit Connecticut from singling out a group of litigants that it rationally concludes is most likely to be deterred from delaying settlements at the least cost to the state. See Bankers Life Casualty Co. v. Crenshaw, 486 U.S. 71,85, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988). The legislature does view plaintiffs and defendants differently. But is it arbitrary and irrational to recognize their economic disparity? CT Page 14137 Is it arbitrary and irrational to appreciate that plaintiffs complain of injury or damage or wrong? Is it arbitrary or irrational to understand that defendants often have an incentive to keep and invest funds otherwise available for settlement? Is it arbitrary and irrational to acknowledge that plaintiffs bear the burden of proof? This court is not convinced beyond a reasonable doubt that the legislature acted arbitrarily or irrationally.
For the reasons stated herein, General Statutes § 52-192a and Practice Book §§ 345 et seq. are not unconstitutional.
The jury verdict of $7,400,000 is reduced by collateral source payments of $155,179.17, deducted from the economic damage award, resulting in an adjusted judgment of $7,244,820.83. Prejudgment interest is ordered from the day suit commenced, May 29, 1991, until the date of this order, December 15, 1995, in the sum of $3,953,886.10. An attorney's fee of $350 is ordered. Judgment may enter for the plaintiff against the defendants in the sum of $11,199,056.93. Pursuant to General Statutes § 37-3b, postjudgment interest shall accrue until such time as the amount duly owed has been paid.
Martin, J.